# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

James D. Robertson, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2012-205909

---

## ON WRIT OF CERTIORARI

---

Appeal From York County
Lee S. Alford, Circuit Court Judge

---

Opinion No. 27691
Heard October 8, 2015 – Filed December 14, 2016

---

## REVERSED AND REMANDED

---

Keir M. Weyble, of Cornell Law School, of Ithaca, New York, and Emily C. Paavola, of Justice 360, of Columbia, both for Petitioner.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka and Senior Assistant Attorney General William Edgar Salter, III, all of Columbia, for Respondent.

---

**JUSTICE BEATTY:** In this capital Post-Conviction Relief ("PCR") case, James D. Robertson ("Petitioner") filed a second PCR application alleging, among other things, that his prior PCR counsel were not qualified under section 17-27-160(B) of the South Carolina Code[1] and failed to competently represent him. Without a hearing, the PCR judge dismissed the application on the grounds that it was successive and barred by the one-year statute of limitations and laches. This Court granted certiorari to review the circuit court's dismissal of Petitioner's application. Petitioner contends his second PCR application should not have been summarily dismissed as successive because his case presents unique circumstances warranting review of prior PCR counsel's assistance under *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).[2] We reverse and remand.

## I. Factual / Procedural History

On March 26, 1999, Petitioner was convicted and sentenced to death for the 1997 murder of his parents, armed robbery, and financial transaction card fraud. Over the course of the next four years, Petitioner filed a direct appeal through appointed counsel, moved to relieve appointed appellate counsel, and filed a pro se appeal to this Court on July 25, 2003. Ultimately, following a judicial determination of competency, Petitioner waived his right to direct appeal. On June 3, 2005, this Court dismissed Petitioner's direct appeal after conducting the proportionality review mandated by section 16-3-25[3] of the South Carolina Code.

On July 7, 2005, this Court granted Petitioner's request for a stay of execution to pursue PCR. This Court also appointed then Circuit Court Judge John

---

[1] S.C. Code Ann. § 17-27-160(B) (2014) (identifying requisite qualifications for counsel appointed to represent an indigent, capital PCR applicant).

[2] *See Martinez v. Ryan*, 132 S. Ct. 1309 (2012) (holding that a state procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance of counsel if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective).

[3] S.C. Code Ann. § 16-3-25 (2003) (identifying procedure Supreme Court must use in reviewing cases involving a sentence of death).

Few to preside over the PCR proceedings. Judge Few appointed Michael Langford Brown, Jr., and Joseph D. Matlock, both of Rock Hill, to represent Petitioner.[4]

On March 1, 2006, Petitioner filed a PCR application (the "2006 Application") generally alleging ineffectiveness of trial counsel. At the beginning of the PCR hearing, Petitioner's counsel verbally amended the application to include twelve grounds of ineffectiveness of trial counsel. Following a three-day hearing, Judge Few denied relief and issued an Order of Dismissal on March 24, 2008. In a letter dated October 6, 2010, this Court denied Petitioner's request for a writ of certiorari.

On January 7, 2011, Petitioner, with the assistance of federally appointed counsel,[5] simultaneously filed a second PCR application in state court and a Petition for a Writ of Habeas Corpus in the United States District Court for the District of South Carolina. By order dated April 8, 2011, a federal magistrate stayed the federal proceedings pending the exhaustion of Petitioner's state court remedies.

In his second PCR application (the "2011 Application"), Petitioner sought to have his convictions and sentences reversed based on trial court error as well as ineffective assistance of trial counsel, appellate counsel, and prior PCR counsel. With respect to PCR counsel, Petitioner alleged that his prior PCR counsel were not qualified under section 17-27-160(B)[6] and failed to competently represent

---

[4] The State maintains that Judge Few appointed Brown by order dated September 9, 2005 and confirmed the appointment during a hearing held on September 23, 2005. Petitioner disputes that such a hearing took place. The parties agree, however, that any tape of the hearing no longer exists.

[5] The federally appointed attorneys are also representing Petitioner before this Court.

[6] Section 17-27-160(B) provides in relevant part:

> If the applicant is indigent and desires representation by counsel, two counsel shall be immediately appointed to represent the petitioner in this action. At least one of the attorneys appointed to represent the applicant must have previously represented a death-sentenced inmate in state or federal post-conviction relief proceedings or (1) must meet the minimum qualifications set forth in Section 16-3-26(B) and

him.[7]  The State filed a Return and a Motion to Dismiss alleging, among other things, that the 2011 Application was barred by the one-year statute of limitations,[8] impermissibly successive to the 2006 Application, barred by laches, and lacked merit.  In Reply, Petitioner urged the PCR judge to deny the motion to dismiss and (1) allow the case to proceed to an evidentiary hearing and final adjudication, or (2) hold the case in abeyance until *Martinez* and *Maples*[9] were resolved by the United States Supreme Court.

By order dated September 20, 2011, Circuit Court Judge Lee S. Alford summarily dismissed the 2011 Application.  In so ruling, the PCR judge found Petitioner's allegation of ineffectiveness of original PCR counsel was not a cognizable state claim that justified filing an untimely, successive PCR application.

Specifically, the judge held:  (1) the 2011 Application was barred by the one-year statute of limitations as it was filed more than five years after Petitioner's direct appeal was dismissed on June 22, 2005 and the appointment of original PCR counsel on September 23, 2005; (2) the 2011 Application was impermissibly successive because an allegation that original PCR counsel were ineffective is not a sufficient reason to allow a successive PCR application; (3) Petitioner waived his right to challenge whether his original PCR counsel were statutorily qualified by failing to object to lead counsel's qualifications during the 2006 PCR hearing; (4) Petitioner failed to prove that original PCR counsel were not statutorily qualified to represent him given there was no evidence to the contrary and Petitioner

---

Section 16-3-26(F) and (2) have successfully completed, within the previous two years, not less than twelve hours of South Carolina Bar approved continuing legal education or professional training primarily involving advocacy in the field of *capital appellate and/or post-conviction defense*.

S.C. Code Ann. § 17-27-160(B) (2014) (emphasis added).

[7]  In support of this contention, Petitioner cited *Martinez* which, at that time, was pending before the United States Supreme Court.

[8]  S.C. Code Ann. § 17-27-45(A) (2014).

[9]  *Maples v. Thomas*, 132 S. Ct. 912 (2012) (concluding, in capital case, that applicant who was abandoned by his attorney in state PCR proceedings established the requisite cause to excuse procedural default in federal habeas action).

erroneously construed the statutory requirements for appointment of PCR counsel in a capital case;[10] (5) Petitioner failed to prove that his original PCR counsel had not performed competently under *Strickland v. Washington*, 466 U.S. 668 (1984) because the mere allegation that new PCR counsel would have raised different grounds in the 2006 PCR action did not establish deficient performance or prejudice; (6) no due process violation occurred during the 2006 PCR action because Petitioner was provided counsel and meaningful access to the courts; (7) no equal protection violation occurred during the 2006 PCR action because Petitioner could not show disparate treatment based upon his status as an indigent defendant; (8) the decision of the United States Supreme Court to grant certiorari in *Martinez* and *Maples* did not mandate the relief sought by Petitioner given a favorable decision in those cases would only address whether a procedural default may be excused in federal court not state court; (9) laches barred relief; (10) Petitioner's allegations of trial court error are not cognizable PCR claims; and (11) Petitioner's allegations of ineffective assistance of original PCR counsel are not cognizable PCR claims.

Petitioner filed a motion to reconsider pursuant to Rule 59(e) of the South Carolina Rules of Civil Procedure. Petitioner objected to, among other things, the PCR judge's dismissal without a hearing, particularly where there was a

---

[10]  In reaching this conclusion, the PCR judge referenced a memorandum issued by then Chief Justice Toal on August 13, 2003 that was sent to all circuit court judges. http://www.sccourts.org/whatsnew/displaywhatsnew.cfm?indexID=165. In the memorandum, Chief Justice Toal opined that counsel is qualified to represent a capital PCR applicant under section 17-27-160(B) if counsel is qualified to represent a capital defendant at trial under section 16-3-26(B). To be qualified to represent a defendant in a capital trial, at least one attorney must have at least five years' experience as a licensed attorney and at least three years' experience in the actual trial of felony cases. S.C. Code Ann. § 16-3-26(B) (2003); Rule 421(b), SCACR. Chief Justice Toal construed section 17-27-160(B) to permit qualification of counsel who has twelve South Carolina Bar approved CLE hours *or* has professional training in capital appellate or PCR defense rather than requiring twelve hours of education or training in capital appellate or PCR defense. Chief Justice Toal believed that this construction avoids the absurd result that an attorney qualified to represent a defendant in the trial of a capital case would not necessarily be qualified to represent a capital PCR applicant. Accordingly, Chief Justice Toal concluded that "anyone who is qualified to represent a capital defendant at trial, and has completed their CLE requirements should be deemed qualified to represent a petitioner in a capital PCR proceeding under § 17-27-160."

disagreement between the parties regarding whether original PCR counsel met the statutory qualifications to be appointed in a capital PCR case. In support of this assertion, Petitioner supplemented the motion with: (1) affidavits confirming that neither Brown nor Matlock were qualified; and (2) a published opinion wherein Brown was publicly reprimanded for professional misconduct, which stemmed from substance abuse that occurred in July 2007.

The judge denied the motion, finding Brown had death penalty experience and there was no evidence that Brown's substance abuse problems affected his effectiveness in representing Petitioner in the 2006 PCR action. Additionally, the judge found that any failure to comply with section 17-27-160 did not violate Petitioner's constitutional rights because the statute does not create an independent, constitutional right. Finally, even assuming the State did not comply with section 17-27-160, the judge concluded that Petitioner failed to demonstrate prejudice. This Court granted Petitioner's request for a writ of certiorari to review the PCR judge's order.

## II.  Discussion

### A.  Arguments

Petitioner seeks for this Court to vacate the PCR judge's order summarily dismissing his 2011 Application and remand for a hearing. As the basis for this relief, Petitioner asserts that this Court, in response to *Martinez*, should amend existing state court PCR proceedings to permit Petitioner to file a second PCR application. While acknowledging the existing prohibition against successive PCR applications under section 17-27-90 and cases interpreting the statute, Petitioner maintains that this law should be re-evaluated based on *Martinez*. Additionally, because Petitioner claims that prior PCR counsel were not qualified under section 17-27-160(B) and were ineffective, he contends that these reasons were sufficient to allow him to file a timely, successive PCR application and require a hearing on the merits. Due to the alleged deficiencies in prior PCR counsel's representation, Petitioner avers that he was denied a full and fair opportunity to present his claims.

### B.  Procedural Default in PCR Proceedings

The South Carolina Legislature enacted the Uniform Post-Conviction Procedure Act to govern all aspects of PCR, including strict time deadlines and the appointment of counsel in capital PCR proceedings. S.C. Code Ann. §§ 17-27-10 to -160 (2014). A PCR application must be filed within one year after the entry of

a judgment of conviction, or if there is an appeal, within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later.  *Id.* § 17-27-45(A).  However, "[i]f the applicant contends that there is evidence of material facts not previously presented and heard that requires vacation of the conviction or sentence, the application must be filed under this chapter within one year after the date of actual discovery of the facts by the applicant or after the date when the facts could have been ascertained by the exercise of reasonable diligence."  *Id.* § 17-27-45(C).

"All applicants are entitled to a full and fair opportunity to present claims in one PCR application."  *Odom v. State*, 337 S.C. 256, 261, 523 S.E.2d 753, 755 (1999).  "Successive PCR applications and appeals are generally disfavored because they allow an applicant to receive more than 'one bite at the apple as it were.'"  *Id.*

Section 17-27-90 of the South Carolina Code generally prohibits the filing of successive PCR applications, stating:

> All grounds for relief available to an applicant under this chapter must be raised in his original, supplemental or amended application.  Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, *unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application.*

S.C. Code Ann. § 17-27-90 (2014) (emphasis added).  In *Aice v. State*, this Court interpreted section 17-27-90 to forbid "a successive PCR application unless an applicant can point to a 'sufficient reason' why the new grounds for relief he asserts were not raised, or were not raised properly."  *Aice v. State*, 305 S.C. 448, 450, 409 S.E.2d 392, 394 (1991).  The Court in *Aice* acknowledged that there may be "unique" circumstances,[11] where a PCR counsel's assistance could be challenged in

---

[11] *See, e.g.*, *Washington v. State*, 324 S.C. 232, 478 S.E.2d 833 (1996) (permitting successive PCR application where multiple procedural irregularities, including the denial of a direct appeal, prohibited applicant the benefit of due process); *Carter v. State*, 293 S.C. 528, 362 S.E.2d 20 (1987) (authorizing a successive PCR

a successive application. *Id.* at 451, 409 S.E.2d at 394. However, the Court expressly held "the contention that prior PCR counsel was ineffective is not *per se* a 'sufficient reason' allowing for a successive PCR application under § 17-27-90." *Id.*

Despite the express holding in *Aice*, Petitioner argues that *Martinez* excuses the procedural bar of section 17-27-90. In *Martinez*, the "precise question" addressed by the United States Supreme Court ("USSC") was "whether ineffective assistance in an initial-review collateral proceeding on a claim of ineffective assistance at trial may provide cause for a procedural default in a federal habeas proceeding." *Martinez*, 132 S. Ct. at 1315. The USSC answered this question by holding that:

> [w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Id.* at 1320. In reaching this conclusion, the USSC recognized that federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are governed by rules designed to ensure that state-court judgments are accorded finality and respect necessary to preserve the integrity of legal proceedings within the system of federalism, including the doctrine of procedural default. *Id.* at 1316.

The USSC explained:

> Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows

application where the applicant did not have PCR counsel that differed from his trial counsel); *Case v. State*, 277 S.C. 474, 289 S.E.2d 413 (1982) (allowing a successive PCR application where applicant's first PCR application was dismissed without assistance of legal counsel and without a hearing).

that, when a State requires a prisoner to raise an ineffective-assistance-of-trial-counsel claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two circumstances. The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under the standards of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit. *Cf. Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L.Ed. 2d 931 (2003) (describing standards for certificates of appealability to issue).

*Id.* at 1318-19.

One year after *Martinez* was decided, this Court explicitly stated that "the holding in *Martinez* is limited to federal habeas corpus review and is not applicable to state post-conviction relief actions." *Kelly v. State*, 404 S.C. 365, 365, 745 S.E.2d 377, 377 (2013).

Appellate courts have continued to adhere to this Court's holding in *Kelly*. *See, e.g., Salter v. State*, 184 So. 3d 944 (Miss. Ct. App. 2015) (discussing *Kelly* and holding that *Martinez* does not apply to Mississippi PCR proceedings), *cert. denied*, 185 So. 3d 385 (Miss. 2016); *Brown v. McDaniel*, 331 P.3d 867, 871-72 (Nev. 2014) (citing *Kelly* and declining to alter Nevada PCR procedures based on *Martinez*). Significantly, courts from other jurisdictions have also extended the holding in *Kelly* to encompass capital PCR proceedings. *See State v. Hessler*, 850 N.W.2d 777, 786 (Neb. 2014) (citing *Kelly* and concluding in a capital PCR case that "[n]othing in *Martinez* prevents state courts from enforcing procedural defaults in accordance with state law").

We find that Petitioner has offered no legitimate legal or policy reason to depart from our holding in *Kelly*. Notably, Petitioner has never moved to argue against precedent. Moreover, because the PCR Act is a legislatively created scheme, any post-*Martinez* change to PCR proceedings must be instituted by the Legislature. *See Brown*, 331 P.3d at 875 ("Whether or how a rule similar to that adopted in *Martinez* should be adopted in state post-conviction proceedings is a

matter of policy and lies in the hands of the Legislature."); *Hessler*, 850 N.W.2d at 787 (declining to extend *Martinez* to state court PCR proceedings and noting that it was for the Legislature to determine the consequences of *Martinez*). Accordingly, we hold that *Martinez* does not afford Petitioner a right to file a successive PCR application by merely alleging ineffective assistance of prior PCR counsel.

However, Petitioner's 2011 Application also alleged, as a separate and distinct ground not addressed by *Aice*,[12] that prior PCR counsel were not qualified under section 17-27-160(B). We conclude Petitioner's allegation that he was denied a state-created right to qualified counsel constitutes a "sufficient reason" to permit a successive PCR application under section 17-27-90.[13] Furthermore, we find that Petitioner's 2011 Application was filed within the one-year statute of limitations provided by section 17-27-45 as prior PCR counsel's alleged lack of qualification was not discovered until federal counsel was appointed in 2011. Contrary to the State's position, we find Petitioner did not waive his challenge to counsel's lack of qualification by failing to raise this issue during the 2006 PCR proceeding. We believe it is unreasonable to think that an indigent PCR applicant,

---

[12] The dissent cites *Aice* to support its position that Petitioner's application is impermissibly successive. The dissent's reliance on *Aice* is misplaced as this case was decided by this Court in 1991 before the Legislature identified the qualifications for capital PCR counsel in 1996.

[13] The dissent disagrees that Petitioner's allegation he was denied a state-created right to qualified counsel constitutes a "sufficient reason" to permit a successive PCR application under section 17-27-90. Instead, the dissent characterizes Petitioner's challenge to his capital PCR counsel's qualifications as "merely" a "routine ineffectiveness argument." We question how Petitioner's challenge could be "routine" as his allegation is based on a distinct statute that is only applicable to capital PCR applicants. Further, the dissent cites no authority for its position but, rather, acknowledges cases where this Court permitted a successive application. Finally, the dissent claims a petition brought pursuant to *Butler v. State*, 302 S.C. 466, 397 S.E.2d 87 (1990) is adequate to address Petitioner's challenge. While the dissent may believe a *Butler* petition is the "ultimate safety net," it seems nonsensical to require a capital PCR applicant to exhaust all state and federal relief with the assistance of counsel who may ultimately be found unqualified. In the interest of judicial economy and fundamental fairness, we believe an allegation that capital PCR counsel is unqualified should be resolved at the earliest point in the proceedings and not after an applicant has exhausted all permitted relief.

who relies on the State to appoint qualified counsel, would have the knowledge to question counsel's qualifications at the onset of the proceeding.

Having determined that Petitioner's 2011 Application was procedurally proper, we must next construe section 17-27-160(B) and identify the requisite qualifications for capital PCR counsel.

## C.      Statutorily Mandated Qualifications for Capital PCR Counsel

In 1996, Congress passed the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  *See* Pub. L. No. 104-132 (1996).  In the AEDPA, "Congress provided streamlined federal habeas procedures to those states that maintain mechanisms for the mandatory appointment and compensation of competent counsel during state postconviction proceedings."  Celestine Richards McConville, *The Right to Effective Assistance of Capital Postconviction Counsel: Constitutional Implications of Statutory Grants of Capital Counsel*, 2003 Wis. L. Rev. 31, 35 (2003) (footnote omitted).  "By this act, Congress chose to restrict federal *habeas corpus* review in exchange for the states[] appointing competent counsel for indigent capital defendants for purposes of state postconviction review."  *Lee v. State*, 238 S.W.3d 52, 56 (Ark. 2006) (citing Burke W. Kappler, *Small Favors:  Chapter 154 of the Antiterrorism and Effective Death Penalty Act, the States, and the Right to Counsel*, 90 J. Crim. L & Criminology 467, 469 (2000)).

In response, the majority of death-penalty states addressed issues relating to capital PCR counsel.  McConville, *supra*, at 35.  South Carolina, one of ten states, "amended their rules to provide a mandatory right to counsel for capital defendants at the state postconviction stage."  *Id.*  In 1996, the South Carolina Legislature enacted the "South Carolina Effective Death Penalty Act of 1996."  Act No. 448, 1996 S.C. Acts 2709, 2712-14.  As a provision in this Act, the Legislature included section 17-27-160 to provide, in part, for "the appointment and compensation of counsel" in capital PCR proceedings.  *Id.*

Taking into account the express purpose of section 17-27-160, we find the Legislature intended for an indigent capital defendant to be appointed counsel who: (1) has previous experience representing a capital defendant in state or federal PCR proceedings, or (2) was qualified to try a capital case and successfully completed at least twelve hours of South Carolina Bar approved (a) CLE specifically involving *capital* appellate or *capital* PCR proceedings or (b) professional training specifically involving *capital* appellate or *capital* PCR proceedings.  *See* fn.6,

*supra*. Simply stated, at least one attorney appointed pursuant to section 17-27-160(B) must have either (1) prior experience in capital PCR proceedings, or (2) capital trial experience and capital PCR training or education.

Furthermore, given the inclusion of section 17-27-160 in the South Carolina Effective Death Penalty Act of 1996 and specific designation as providing procedures for capital PCR, we find this construction comports with the intent of the Legislature for appointed counsel to be proficient in capital PCR proceedings and not just capital trial proceedings. *See Charleston Cnty. Sch. Dist. v. State Budget & Control Bd.*, 313 S.C. 1, 5, 437 S.E.2d 6, 8 (1993) ("The cardinal rule of statutory construction is to ascertain and effectuate the intent of the legislature."); *S.C. State Ports Auth. v. Jasper Cnty.*, 368 S.C. 388, 398, 629 S.E.2d 624, 629 (2006) (stating that "the statute must be read as a whole and sections which are a part of the same general statutory law must be construed together and each one given effect").

## D.    Application to the Instant Case

Based on our construction of section 17-27-160(B), we find the PCR judge erred in ruling that compliance with section 17-27-160(B) only required capital PCR counsel to have capital *trial* experience. Moreover, we agree with Petitioner that the PCR judge erred in summarily dismissing the 2011 Application because there was a genuine issue of fact as to whether prior PCR counsel met the qualifications of section 17-27-160(B).

Summary dismissal of a PCR application without a hearing is appropriate only when (1) it is apparent on the face of the application that there is no need for a hearing to develop any facts, and (2) the applicant is not entitled to relief. S.C. Code Ann. § 17-27-70(b), (c) (2014). "When considering the State's motion for summary dismissal, where no evidentiary hearing has been held, the PCR judge must assume facts presented by the applicant are true and view those facts in the light most favorable to the applicant." *McCoy v. State*, 401 S.C. 363, 369, 737 S.E.2d 623, 626 (2013). "Similarly, when reviewing the propriety of a dismissal, this Court must view the facts in the same fashion." *Leamon v. State*, 363 S.C. 432, 434, 611 S.E.2d 494, 495 (2005).

"Where an applicant alleges facts that would establish an exception to either the statute of limitations or the prohibition against successive PCR applications and those facts are not conclusively refuted by the record before the PCR court, a

question of fact is raised which can only be resolved by a hearing." *McCoy*, 401 S.C. at 369, 737 S.E.2d at 626.

Here, Petitioner offered affidavits confirming that neither Brown nor Matlock were qualified as capital PCR counsel. Petitioner also notes that Judge Few's summary order of September 9, 2005, appointing Brown as counsel, contained no reference to section 17-27-160 or a finding that counsel was qualified. In contrast, the State maintains that Judge Few conducted a hearing on September 23, 2005 during which he confirmed the appointment of Brown. Both parties agree that there is no tape or transcript of the September 23, 2005 hearing.

Because the parties offered conflicting evidence as to whether Petitioner's prior PCR counsel met the requisite qualifications, the PCR judge erred in dismissing the 2011 Application without a hearing. Consequently, we remand for a determination of whether prior PCR counsel were statutorily qualified. *See Lee v. State*, 238 S.W.3d 52 (Ark. 2006) (remanding for circuit court to conduct further proceedings where capital PCR counsel, who admitted to being impaired by alcohol during capital PCR proceeding, may not have met the specific qualifications set forth in state rule providing for the appointment of counsel).

In the event that prior PCR counsel are deemed unqualified under section 17-27-160(B), the judge must decide the appropriate remedy. Because we have yet to enunciate how this remedy is to be determined, we take this opportunity to do so.

### E.     Remedy for Lack of Qualified Counsel

Although we have researched other states that have qualification statutes or rules similar to section 17-27-160(B), we have been unable to find a case that sets forth a test for non-compliance. However, based on our reading of *Martinez,* we find the *Strickland*[14] test is appropriate and should be applied to evaluate this type of case. *See Martinez*, 132 S. Ct. at 1318 (recognizing that effectiveness of

---

[14]   In *Strickland*, the USSC enunciated a two-pronged test to establish ineffective assistance of counsel by which a PCR applicant must show (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). Under the second prong, the PCR applicant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

counsel, who represented defendant in an initial-review collateral proceeding, should be evaluated under the standards of *Strickland*).[15]

Applying the *Strickland* test, we conclude that non-compliance with section 17-27-160(B) constitutes deficient performance per se. To rule otherwise, we believe would render meaningless the Legislature's intent to have *qualified* counsel appointed to capital PCR applicants. *See Tucker v. Catoe*, 221 F.3d 600, 604-05 (4th Cir. 2000) (evaluating the State's failure to comply with section 17-27-160 and stating, "We accordingly conclude that a state must not only enact a 'mechanism' and standards for post-conviction review counsel, *but those mechanisms and standards must in fact be complied with* before the state may invoke the time limitations of U.S.C. § 2263" (emphasis added)).[16] Nevertheless, a PCR applicant would still maintain the significant burden of proving that he was prejudiced by counsel's lack of qualification.

---

[15] *See also Tucker v. Moore*, 56 F. Supp. 2d 611 (D.S.C. 1999) (holding that State's failure to follow section 17-27-160 is not a violation of an applicant's constitutional rights because the rights granted under that statute, if not given, do not penalize the applicant), *aff'd*, 221 F.3d 600 (4th Cir. 2000), *cert. denied*, 531 U.S. 1054 (2000); *Aeschliman v. State*, 973 P.2d 749 (Idaho Ct. App. 1999) (recognizing that trial counsel's lack of qualifications under the ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Case did not constitute ineffective assistance of counsel per se; concluding that applicant must allege specific instances where trial counsel fell short of an objective standard of reasonableness); *State v. Misch*, 656 N.E.2d 381 (Ohio Ct. App. 1995) (finding that lack of certification of defense counsel as experienced in capital cases under court rules does not automatically create a presumption that trial counsel has not provided effective assistance of counsel; recognizing that the effectiveness of counsel not qualified under court rule must be judged under the *Strickland* standard); *State v. Maletta*, 781 P.2d 350, 354 (Or. Ct. App. 1989) (concluding that no legitimate policy is served by dismissal of a charge where trial counsel in a capital case was not qualified under a state statute if the defendant was not prejudiced; noting that "adequacy of counsel is measured by performance, not credentials").

[16] Also, by analogy, a violation of a statute in a civil proceeding constitutes negligence per se. *See Fairchild v. S.C. Dep't of Transp.*, 398 S.C. 90, 727 S.E.2d 407 (2012) (recognizing that the violation of an applicable statute constitutes negligence per se).

## III.   Conclusion

Despite this Court's express ruling in *Kelly*, Petitioner seeks to have the Court create a state remedy that is the equivalent of the federal remedy established by *Martinez*.  We decline to do so.  Instead, we reaffirm *Kelly* and extend its holding to encompass capital PCR cases.  However, we conclude that Petitioner's allegation that prior PCR counsel were unqualified is not foreclosed by *Aice* or its progeny and constitutes a "sufficient reason" to avoid the prohibition of section 17-27-90 against successive PCR applications.  Furthermore, we find that Petitioner's 2011 Application was filed within the one-year statute of limitations provided by section 17-27-45 as prior PCR counsel's alleged lack of qualification was not discovered until federal counsel was appointed in 2011.  Additionally, we hold that the PCR judge erroneously construed section 17-27-160(B) as we conclude that at least one attorney appointed pursuant to this code section must have either (1) prior experience in capital PCR proceedings, or (2) capital trial experience and capital PCR training or education.

Because there is a genuine issue of fact as to whether prior PCR counsel were statutorily qualified, Petitioner should be afforded a hearing on this limited issue.  *Cf. McCoy*, 401 S.C. at 370, 737 S.E.2d at 627 ("Although Petitioner's PCR claim may ultimately prove to be untimely, successive, or perhaps unsuccessful on the merits, the PCR judge erred in granting the State's motion for summary dismissal because genuine issues of material fact exist as to whether Petitioner's PCR claim is successive or untimely.").  If prior PCR counsel are deemed unqualified and, as a result, deficient, the PCR judge must make a determination whether under *Strickland*, Petitioner was prejudiced.  Accordingly, we reverse the PCR judge's order and remand the matter for a hearing.

**REVERSED AND REMANDED.**

**KITTREDGE and HEARN, JJ., concur.    PLEICONES, C.J., concurring in part and dissenting in part in a separate opinion.  Acting Justice Jean H. Toal, dissenting in a separate opinion.**

**CHIEF JUSTICE PLEICONES:**  I concur in part and dissent in part.  I agree with the majority's analysis of the *Martinez* issue and concur in its analysis[17] of S.C. Code Ann. § 17-27-160(B) (2014).

I disagree, however, that a capital PCR applicant must demonstrate *Strickland*[18] prejudice in order to be entitled to relief for a statutory violation of § 17-27-160(B).  In 1991, a majority of the Court abolished the doctrine of *in favorem vitae* which required the Court to search the record in a capital appeal for legal error.  *State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991).  The abolition of this common law doctrine was justified in large part because of the protections afforded by the Uniform Post-Conviction Procedure Act.  That PCR is a poor substitute for *in favorem* review, however, was made explicit in *Franklin v. Catoe*, 346 S.C. 563, 552 S.E.2d 718 (2001).  In *Franklin*, the capital PCR applicant contended trial counsel were ineffective in failing to inform him of his statutory right to argue to the jury in the guilt phase of his trial.  The *Franklin* majority acknowledged that the applicant had been denied this statutory right, and that prior to the abolition of *in favorem*, this error would have warranted a new trial.  The majority held, however, that with PCR "replacing" *in favorem* review, a capital PCR applicant now bore the burden of proving not only error, but also constitutional prejudice.  I dissented, and wrote:

> In my opinion, we must honor the General Assembly's prerogative to establish the procedural safeguards which it deems necessary to the fair administration of the death penalty.  Where the legislature has prescribed a departure from the procedures observed in "ordinary" criminal trials, those deviations should be scrupulously honored.  I would thus not engage in a prejudice analysis where the undisputed facts do not demonstrate a conscious waiver or strategic decision to forego one of the special protections mandated by the capital statutes.

> *Franklin v. Catoe*, *supra*, Pleicones, J., *dissenting*.

---

[17] I would simply add that where the attorney seeks to be qualified by virtue of training or CLE, that education must have been accomplished within the two years preceding the appointment.

[18] *Strickland v. Washington*, 466 U.S. 668 (1984).

Based upon my view of the Court's obligation to enforce statutes governing special procedures in capital proceedings, including those mandating the qualifications of attorneys, and based upon the assurances made in *Torrence* that "[O]ther mechanisms of protection and of relief have now been created for the [capital] defendant which safeguard [him] and render the protections afforded by *in favorem vitae* surplusage,"[19] I would hold that a capital PCR applicant must be appointed counsel who meet the qualifications set forth in § 17-27-160(B). If upon remand it is determined that Petitioner was not represented by statutorily qualified counsel, then in my view the appropriate remedy is a new PCR proceeding in which he is represented by such counsel.

For the reasons given above, I concur in part and dissent in part.

---

[19] *State v. Torrence*, 305 S.C. 45, 61, 406 S.E.2d 315, 324 (1991).

**ACTING JUSTICE TOAL:** I respectfully dissent.  I would affirm the post-conviction relief (PCR) court's dismissal of Petitioner's second PCR application because Petitioner's allegation of ineffectiveness does not justify the filing of an untimely, successive PCR application.  Further, I disagree with the majority's interpretation of section 17-27-160(B) of the South Carolina Code[20] and would find that an attorney who is qualified to represent a capital defendant at trial is likewise qualified to represent a capital defendant in PCR proceedings.

### A.    *Successive Application*

First, I would find that Petitioner has not set forth sufficient reasons in his application to overcome the prohibition against successive PCR applications.  *See* S.C. Code Ann. § 17-27-90 (2014) ("Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental or amended application."); *Aice v. State*, 305 S.C. 448, 450, 409 S.E.2d 392, 394 (1991) (interpreting section 17-27-90 to prohibit "a successive PCR application unless an applicant can point to a 'sufficient reason' why the new grounds for relief he asserts were not raised, or were not raised properly").

While I agree with the majority that Petitioner should not be afforded review pursuant to *Martinez*,[21] and that *Kelly*[22] should be extended to capital PCR cases, I disagree with the majority's holding that applications containing allegations

---

[20] Section 17-27-160(B) requires the appointment of two attorneys in a PCR capital case, of which one attorney "must have previously represented a death-sentenced inmate in state or federal post-conviction relief proceedings or (1) must meet the minimum qualifications set forth in [s]ection 16-3-26(B) and [s]ection 16-3-26(F) and (2) have successively completed, within the previous two years, not less than twelve hours of South Carolina Bar approved continuing legal education or professional training primarily involving advocacy in the field of capital appellate and/or post-conviction defense."

[21] *Martinez v. Ryan*, 132 S. Ct. 1309 (2012).

[22] *Kelly v. State*, 404 S.C. 365, 745 S.E.2d 377 (2013).

regarding compliance with section 17-27-160(B) warrant automatic review of an otherwise successive application. *See Aice*, 305 S.C. at 451, 409 S.E.2d at 394 ([T]he contention that prior PCR counsel was ineffective is not *per se* a 'sufficient reason' allowing for a successive PCR application under § 17-27-90."). Even though Petitioner is challenging his PCR counsel's qualifications, he is merely asserting a routine ineffectiveness argument, which does not constitute a "sufficient reason" why the new grounds for relief he asserts were not raised, or were not raised properly. *But see Washington v. State*, 324 S.C. 232, 478 S.E.2d 833 (1996) (permitting a successive application where multiple procedural irregularities prohibited the applicant from receiving a direct appeal); *Carter v. State*, 293 S.C. 528, 362 S.E.2d 20 (1987) (permitting a successive application where trial counsel also served as PCR counsel); *Case v. State*, 277 S.C. 474, 289 S.E.2d 413 (1982) (permitting a successive application where a pro se PCR application was dismissed without a hearing).[23] I am hesitant to create another tier of review in an already thorough process when procedures exist to deal with successive (but meritorious) claims that may have slipped through the cracks of the normal review process.

### B. Interpretation of Section 17-27-160(B)

Moreover, I disagree with the majority's interpretation of section 17-27-160(B). Since 2003, counsel has been held to be qualified to represent a capital PCR applicant if counsel is qualified to represent a capital defendant *at trial*[24] and has completed the continuing legal education requirements. *See Re Appointment of Counsel in Capital Post-Conviction Relief Matters*, dated August 15, 2003, found at http://www.sccourts.org/whatsnew/displaywhatsnew.cfm?indexID=165. I see no reason to depart from this interpretation now. In my opinion, the sound

---

[23] Moreover, there is still the ultimate safety net provided by *Butler* petitions in cases in which a PCR applicant has exhausted all permitted relief but "where there has been a violation, which, *in the setting,* constitutes a denial of fundamental fairness shocking to the universal sense of justice." *Butler v. State*, 302 S.C. 466, 468, 397 S.E.2d 87, 88 (1990) (internal quotation marks omitted) (citation omitted); *McWee v. State*, 357 S.C. 403, 414, 593 S.E.2d 456, 461 (2004) (Pleicones, J., dissenting) (explaining a *Butler* petition provides the Court with "a final opportunity to review the fundamental fairness of a criminal proceeding").

[24] An attorney is qualified to represent a capital defendant at trial if he or she has at least five years' experience as a licensed attorney and at least three years' experience in the actual trial of felony cases. *See* S.C. Code Ann. § 16-3-26(B) (2015); Rule 421(b), SCACR.

reasoning underlying that interpretation still holds true, and the adoption of the majority's interpretation of the statute would lead to the illogical result that an attorney meeting the qualifications to defend a capital defendant at trial may not be qualified to defend him in PCR proceedings. *Id.*

## C.    Conclusion

For these reasons, I would affirm the decision of the PCR court.