**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

Korey Lamar Love, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2016-002233

---

**ON WRIT OF CERTIORARI**

---

Appeal from Greenville County
Daniel Dewitt Hall, Circuit Court Judge

---

Opinion No. 27921
Submitted May 15, 2019 – Filed October 2, 2019

---

**REVERSED AND REMANDED**

---

E. Charles Grose Jr., of Grose Law Firm, of Greenwood,
for Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Lindsey Ann McCallister, both of
Columbia, for Respondent.

---

**JUSTICE JAMES:** In this post-conviction relief (PCR) matter, Korey Lamar Love moved at the outset of his PCR hearing to amend his application for relief to add four additional grounds of ineffective assistance of counsel. This appeal centers upon only one of those additional grounds, specifically that trial counsel was ineffective for failing to object to a portion of the State's closing argument. The

State objected to the amendments, and the PCR court denied Love's motion to amend, finding the State would be unfairly prejudiced by allowing Love to amend his PCR application upon such short notice. We granted Love a writ of certiorari to address whether the PCR court erred by not allowing him to amend his application to add the ground concerning the State's closing argument. We reverse the PCR court's denial of Love's motion to amend to add that one ground, and we remand this matter to the PCR court and instruct the PCR court to consider the merits of this additional ground.

## FACTUAL AND PROCEDURAL HISTORY

On January 27, 2007, at approximately 1:30 a.m., Isaac Bass (Victim) completed his shift at the Greenville Wendy's on Pleasantburg Drive and exited the restaurant through the self-locking back door. Victim was immediately confronted by an armed assailant, who attempted to rob Victim. Victim called for help, and a struggle ensued. Victim broke free from the assailant and attempted to run away; however, the assailant shot Victim in the neck. The assailant and a cohort fled the scene. Victim got to his feet, walked around the side of the Wendy's, and banged on the drive-thru window. Because he was shot in the neck, Victim was unable to call for help. Victim made his way towards the street and flagged down a passing vehicle. The driver saw Victim on the side of the road and observed two men sprinting away from the Wendy's. The driver stopped to provide Victim assistance; however, Victim did not survive.

Because there was no physical evidence linking the case to any suspect, the case went unsolved for a few years. In 2010, Detective Collis Flavell was assigned to the case. Detective Flavell informed Victim's parents he was working the case, and the community soon became involved in raising reward money and asking people to come forward with information. As a result of these efforts, Detective Flavell received a tip suggesting law enforcement investigate certain members of the Love family.

Following an investigation, Korey Love was arrested and indicted for murder, attempted armed robbery, possession of a weapon during the commission of a violent crime, and possession of a pistol by a person under the age of eighteen. At trial, the State's case was built upon the testimony of several people who explained Love's involvement in Victim's murder. During the State's closing argument, the State told the jury:

> This is your opportunity to do justice in this case under the oath that you have taken. You can be instruments of

justice for [Victim]. His death was not the final chapter of his life, this trial is the final chapter of his life.

Trial counsel did not object to this comment. The jury found Love guilty as indicted. The trial court sentenced Love to concurrent prison terms of fifty years for murder, twenty years for attempted armed robbery, five years for possession of a weapon during the commission of a violent crime, and five years for possession of a pistol by a person under the age of eighteen. The court of appeals dismissed Love's direct appeal following *Anders*[1] briefing. *State v. Love*, Op. No. 2014-UP-177 (S.C. Ct. App. filed Apr. 23, 2014).

Love filed an application for PCR on April 8, 2015, claiming ineffective assistance of both trial and appellate counsel. A PCR hearing was held on February 17, 2016. As the hearing commenced, Love moved to amend his application to add four additional grounds of ineffective assistance of counsel. The following exchange took place:

> **Love:** I have an amended application that I would like to hand up. It adds some matters that were on the record but not included in the original application.
>
> **The State:** Your Honor, we would object to that. Again, this case has been scheduled for more than a month. I was handed the amendments this morning.
>
> **Love:** I've marked this as Applicant's Exhibit Number 4, at least as a proffer, and I move to be allowed to amend under the liberal rules of . . . civil procedure that allow amendments, even amendments during and after the trial in a civil case.
>
> **PCR Court:** [Assistant Attorney General], have you seen the amended application?
>
> **The State:** About 20 minutes ago for the first time. Yes, Your Honor. I mean, there's no reason this couldn't have been emailed to me at any point prior to this morning. I mean, this is not a surprise. The roster goes out a month in advance. [PCR counsel] and I discussed before I put the

---

[1] *See Anders v. California*, 386 U.S. 738 (1967).

roster out the fact that this case would be held in February. This is not a surprise to anybody.

The fact that I'm being hit with affidavits and phantom letters and amendments the day of the hearing, if I did this to opposing counsel, there would be hell to pay. I do not believe that we should be made to go forward on amendments that clearly could have been filed prior to this morning, Your Honor.

**PCR Court:** Yeah. I'm not going to allow -- I'm not going to allow the amended application to be considered for purposes of today when here, at the moment of trial, the moment of hearing -- or 20 minutes prior is when the [Assistant] Attorney General just received that and has not had an opportunity to respond. And so I'm not going to allow the amended application to be part of this hearing. All right. What's next?

**Love:** That's it. I just would -- at the time I would proffer testimony or proffer parts of the record that relate to the amendment so I can appeal that ruling, Your Honor.

**PCR Court:** All right. I'll leave that in your court.

Because the PCR court denied Love's motion to amend, the testimony primarily focused on the original grounds of ineffective assistance of counsel and not those contained in the amended application. As part of the proffer noted in the above exchange, Love questioned trial counsel about his failure to object to an alleged Golden Rule argument made during the State's closing:

Now, in that same paragraph that we're looking at, the [State] makes a statement about this is your opportunity to do justice in this case under the oath that you've taken. You can be an instrument of justice for [Victim]. His death was not the final chapter of his life. This trial is the final chapter of his life. You didn't object to that statement, did you?

Trial counsel agreed he did not object to this portion of the State's closing argument. There was no other discussion of this issue during the hearing. At the close of his case-in-chief, Love moved to amend his application to conform to the evidence

presented during the hearing. The PCR court denied the motion. Love renewed his motion to amend after the State rested, and the PCR court again denied the motion.

The PCR court denied Love's application for relief in a written order. Of course, the order did not address the merits of the issues Love raised in his amended application, but as to the proposed amendments, the order provided, "[Love] requested to amend the PCR application. [The PCR court] denied the motion, finding the late amendment did not provide adequate notice to opposing counsel." The PCR court also denied Love's motion to conform the pleadings to the evidence presented at the end of the hearing. Love filed a Rule 59(e), SCRCP motion requesting the PCR court to reconsider its denial of relief and to consider the merits of his amended grounds. The PCR court denied the motion. We granted Love's petition for a writ of certiorari to consider the single issue of whether the PCR court erred in refusing to allow the proposed amendment concerning the State's closing argument. We denied the petition as to Love's eight other issues.

## DISCUSSION

"On review of a PCR court's resolution of procedural questions arising under the [Uniform] Post-Conviction Procedure Act or the South Carolina Rules of Civil Procedure, we apply an abuse of discretion standard." *Mangal v. State*, 421 S.C. 85, 92, 805 S.E.2d 568, 571 (2017). The procedures for applying for PCR are outlined in the Uniform Post-Conviction Procedure Act (the PCR Act). *See* S.C. Code Ann. §§ 17-27-10 to -160 (2014). "An application for relief filed pursuant to [the PCR Act] must be filed within one year after the entry of a judgment of conviction or within one year after the sending of the remittitur to the lower court from an appeal or the filing of the final decision upon an appeal, whichever is later." S.C. Code Ann. § 17-27-45(A) (2014). "All grounds for relief available to an applicant under [the PCR Act] must be raised in his original, supplemental or amended application." S.C. Code Ann. § 17-27-90 (2014). Because applicants are traditionally entitled to only one "bite at the apple," it is imperative that applicants raise all known issues in their original, supplemental, or amended applications. "At any time prior to entry of judgment the court may, when appropriate, issue orders for amendment of the application or any pleading or motion . . . ." S.C. Code Ann. § 17-27-70(a) (2014).

The South Carolina Rules of Civil Procedure apply in a PCR action to the extent the rules do not conflict with the PCR Act. *See* Rule 71.1(a), SCRCP. Rule 15(a), SCRCP, provides, "A party may amend his pleading once as a matter of course at any time before or within 30 days after a responsive pleading is served . . . . Otherwise a party may amend his pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so

requires and does not prejudice any other party." Rule 15(b) provides in part, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." In such an instance, the trial court may allow pleadings to be amended upon proper motion. Rule 15(b) also provides that "[i]f evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits."

"[A trial] court is to freely grant leave to amend when justice requires and there is no prejudice to any other party." *Harvey v. Strickland*, 350 S.C. 303, 313, 566 S.E.2d 529, 535 (2002). "The prejudice Rule 15 envisions is a lack of notice that the new issue is going to be tried, and a lack of opportunity to refute it." *Pool v. Pool*, 329 S.C. 324, 328-29, 494 S.E.2d 820, 823 (1998). Essentially, "[a] trial court has discretion to deny a motion to amend if the party opposing the amendment can show a valid reason for denying the motion." *Skydive Myrtle Beach, Inc. v. Horry Cty.*, 426 S.C. 175, 182, 826 S.E.2d 585, 588 (2019).

In *Mangal v. State*, the applicant prepared and filed his original PCR application without the assistance of counsel. 421 S.C. 85, 89, 805 S.E.2d 568, 570 (2017). The applicant was appointed counsel and subsequently retained a different attorney who represented him at his PCR hearing. *Id.* at 90, 805 S.E.2d at 570. No written amendment to the applicant's original application was made. *Id.* During the hearing, PCR counsel asked trial counsel why he failed to object to "improper bolstering" testimony given at trial by one of the State's witnesses—an issue that was not contained in the PCR application—and the State briefly cross-examined trial counsel on the issue. *Id.* at 90, 805 S.E.2d at 571. At the end of the hearing, the applicant argued trial counsel was ineffective in several respects not mentioned in the PCR application, including his failure to object to the allegedly improper bolstering. *Id.* The PCR court denied the applicant relief without addressing the improper bolstering issue. *Id.*

We held the PCR court acted within its discretion in refusing to address the improper bolstering issue. *Id.* at 92, 805 S.E.2d at 571. We explained: (1) the written application contained no indication of a claim based on improper bolstering and no amendment was filed; (2) PCR counsel began the hearing without mentioning additional claims would be presented; (3) even when questioning trial counsel as to why he did not object to the testimony, PCR counsel did not inform the PCR court he would make a claim for ineffective assistance based on trial counsel's failure to

make an objection; and (4) the claim was never made with specificity. *Id.* at 92-93, 805 S.E.2d at 571-72. We highlighted the fact that the State had no notice the applicant intended to pursue the claim until the end of the hearing—after all of the evidence had been presented. *Id.* at 95, 805 S.E.2d at 573. Recognizing the importance of the Sixth Amendment's guarantee of effective assistance of counsel, we noted:

> [T]here are situations where the interests of justice require PCR courts to be flexible with procedural requirements *before* PCR applicants suffer procedural default on substantial claims. Such flexibility is consistent with the purpose and spirit of our Rules of Civil Procedure. These considerations should guide PCR courts when struggling to balance procedural requirements against the importance of the issues at stake in PCR proceedings. We encourage trial courts in PCR cases to use the discretion we grant them on procedural matters to find reasonable ways— within the flexibility of our Rules—to reach the merits of substantial issues.

*Id.* at 99-100, 805 S.E.2d at 575-76 (footnote omitted).

Here, the PCR court summarily concluded the State would be prejudiced by Love's four proposed amendments because the State received notice of the additional grounds only twenty minutes before the hearing began. The timing of an applicant's motion to amend an application is indeed relevant to a consideration of the resulting prejudice such an amendment would cause the State under Rule 15. However, in order to properly exercise its discretion under Rule 15, the PCR court should have separately considered the substance of each proposed amendment and any prejudice that would result to the State if the amendment were allowed. On the issue of prejudice, the State argued to the PCR court: (1) the case had been set for hearing for over a month; (2) PCR counsel could have emailed the State the amendment "at any point prior to this morning"; (3) if the State had done this to PCR counsel, "there would be hell to pay"; and (4) the State should not be required to go forward on amendments that could have been filed "prior to this morning." As noted, the PCR court denied the motion to amend because it was made too late and the State "has not had [the] opportunity to respond." Similarly, in its written order, the PCR court noted the State had not been given adequate notice of the amendments.

We have noted in several cases that "[a]ll applicants are entitled to a full and fair opportunity to present claims in one PCR application." *See Mangal*, 421 S.C. at

100, 805 S.E.2d at 576; *Robertson v. State*, 418 S.C. 505, 513, 795 S.E.2d 29, 33 (2016); *Odom v. State*, 337 S.C. 256, 261, 523 S.E.2d 753, 755 (1999). We have also encouraged PCR courts to find ways to address the merits of "substantial issues" within the flexibility of the Rules of Civil Procedure prior to an applicant suffering procedural default. *See Mangal*, 421 S.C. at 99-100, 805 S.E.2d at 575-76. A separate examination of both the substance of each proposed amendment and potential prejudice is particularly appropriate in a PCR proceeding. *See id.* at 99, 805 S.E.2d at 575 (providing "the Sixth Amendment guarantee of effective assistance of counsel is a 'bedrock principle in our justice system'" (quoting *Martinez v. Ryan*, 566 U.S. 1, 12 (2012))); *Strickland v. Washington*, 466 U.S. 668, 684 (1984) (recognizing "the Sixth Amendment right to counsel exists, and is needed, in order to protect the fundamental right to a fair trial"); *Johnson v. Zerbst*, 304 U.S. 458, 462 (1938) ("The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'").

Many PCR grounds are complex and require extensive preparation on the part of the State and the applicant. The prejudice of allowing an amendment that includes a complex issue very shortly before the commencement of a hearing may be apparent. However, some PCR grounds are not at all complex, and the State's defense to such claims may be straightforward, even if the ground is one advanced by the applicant in an amendment close to the time of the hearing. When analyzing the substance of a proposed amendment and any prejudice the State might suffer, a PCR court should consider all relevant circumstances, including, but not limited to, the timing of the motion, the complexity of the new issue, the degree of surprise to the State, the need for and availability of necessary witnesses to defend against the claim, and whether the substance of the proposed amendment is readily apparent from the underlying plea or trial record. The PCR court should consider the relevant circumstances separately as to each proposed amendment, and after doing so, the PCR court can properly rule on the motion to amend.

Here, the claim Love sought to add centered upon one passage in the trial transcript, specifically the solicitor's statement to the jury that "[y]ou can be instruments of justice for [Victim]. His death was not the final chapter of his life, this trial is the final chapter of his life." Certainly, the State is well-acquainted with claims asserted by applicants in PCR cases that solicitors' comments (opening statements, closing arguments, or otherwise) violate the Golden Rule or are otherwise improper. The issue advanced by Love in this attempted amendment was hardly complex and would have required little regrouping on the part of the State to defend against it. Little to no prejudice would result to the State if this amendment were granted; indeed, the State's arguments against the proposed amendment were

simply that the amendment was filed too late and that there would "be hell to pay" if the State had done the same thing. Neither of these arguments articulate the infliction of prejudice upon the State; therefore, there was no "valid reason for denying the motion." *See Skydive*, 426 S.C. at 182, 826 S.E.2d at 588.

In its brief, the State asserts it would have been prejudiced had the amendment been allowed because the solicitor who made the allegedly offending argument was out of state on medical leave and therefore unavailable to testify at the PCR hearing. We note the State did not cite this circumstance at the hearing as an example of the prejudice it would suffer if the amendment were allowed; even if this circumstance had been so asserted, we conclude that in this case, the unavailability of the solicitor is irrelevant to the consideration of whether trial counsel was ineffective for not objecting to the argument. The solicitor made the supposedly improper comments, and trial counsel did not object; testimony from the solicitor on the point would have added nothing probative to the proceeding.

The dissent submits the Golden Rule issue was tried by consent because Love, without objection from the State, introduced evidence of the solicitor's argument when presenting his case to the PCR court; thus, the dissent contends, the PCR court should have granted Love's motion to amend the pleadings to conform to the evidence pursuant to Rule 15(b), SCRCP ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."). Ordinarily, the introduction of evidence in this manner might convince us the issue was tried by implied consent of the State. However, in this case, when the PCR court denied Love's motion to amend at the outset of the PCR hearing, the PCR court granted Love's request to proffer evidence in support of the grounds set forth in the proposed amended application. Love made this request in an effort to preserve certain issues for appeal; therefore, evidence on the Golden Rule issue was not presented by Love "by express or implied consent," but rather was presented in the form of a proffer.

We hold the PCR court erred in refusing to allow Love to amend his application to include this particular ground for relief. We remand to the PCR court with instructions to receive evidence and argument and consider this ground on the merits. The dissent posits a remand is not necessary because it believes the solicitor's argument was neither violative of due process nor prejudicial to Love, when considered in the context of the entirety of the solicitor's closing argument. The PCR court, not this Court, should make the initial factual and legal findings on Love's claim for relief. Our decision to remand this issue to the PCR court is purely procedural and should in <u>no</u> <u>way</u> be construed as a suggestion to the PCR court as to how it should rule on the merits.

## CONCLUSION

The PCR court first erred in summarily denying Love's motion to amend without separately considering each proposed amendment in light of Rule 15(a), SCRCP.  We further hold the PCR court erred in finding the State would be prejudiced by the granting of the amendment alleging trial counsel was ineffective for failing to object to the solicitor's comments to the jury.  Therefore, we remand this matter to the PCR court for consideration of whether Love is entitled to relief on this ground.

**REVERSED AND REMANDED.**

**BEATTY, C.J., and FEW, J., concur.  KITTREDGE, J., dissenting in a separate opinion in which HEARN, J., concurs.**

**JUSTICE KITTREDGE**:  I dissent.  My preferred disposition would be to dismiss the writ of certiorari as improvidently granted.  Because the majority has opted for a written decision, I vote to affirm the PCR court in result.

First, I take no issue with the majority's excellent presentation of the law, or the appropriateness of a remand under normal circumstances.  To be sure, Rule 15 of the South Carolina Rules of Civil Procedure provides for a liberal approach to the granting of amendments to pleadings.  The reality is that this Court has gone even further in post-conviction relief (PCR) matters due to the practical realities of PCR litigation.  As this Court observed in *Mangal v. State*,

> [T]here are situations where the interests of justice require PCR courts to be flexible with procedural requirements *before* PCR applicants suffer procedural default on substantial claims. . . . We encourage trial courts in PCR cases to use the discretion we grant them on procedural matters to find reasonable ways . . . to reach the merits of substantial issues.

421 S.C. 85, 99–100, 805 S.E.2d 568, 575–76 (2017).

*Mangal* recognizes the distinctive nature of PCR litigation.  For the vast majority of PCR applications, the applicant is in prison.  The inmate complainant begins the process by completing and filling in the blanks of a standardized application.  Sometimes an attorney is thereafter retained to pursue the inmate's PCR claim, but in most cases, counsel is appointed.  Meaningful access to the imprisoned PCR applicant is difficult.  The helter-skelter docketing of PCR matters for trial places further constraints on the normal attorney-client relationship.  The net result of these factors has the effect of counsel typically making a last-minute motion to clean up the applicant's *pro se* PCR application.  A PCR court will generally grant motions to amend the *pro se* complaint.  If, however, the proposed amendment is complicated (factually or legally) and would truly prejudice the State, the better course of action would be to continue the matter and thus remove any possibility of prejudice resulting from the belated amendments.

Here, the majority correctly recognizes the issue raised by Petitioner's proposed amendment was simple and straightforward.  In addition, evidence was presented without objection at the PCR hearing on the challenged portion of the State's closing argument.  Petitioner then "move[d] that the application be amended to conform to [the] evidence per the rules of civil procedure."  As the majority concludes, it was error not to permit the amendment challenging the State's closing

argument as a Golden Rule violation.  The error was compounded when the court likewise denied the motion to conform the pleadings to the evidence.

However, I respectfully disagree that a remand is warranted here.  Not only is the issue underlying the denied amendment straightforward, its resolution is also straightforward.  As a matter of law, the challenged portion of the State's closing argument does not constitute a Golden Rule argument.  Following the multi-day trial, the State made a lengthy closing argument, from which Petitioner claimed three sentences were a Golden Rule violation warranting a new trial.  In its entirety, the challenged portion of the closing argument reads:

> This is your opportunity to do justice in this case under the oath you have taken.  You can be instruments of justice for Isaac Bass.  His death was not the final chapter of his life, this trial is the final chapter of his life.

Petitioner devotes much of his brief to the merits of his Golden Rule argument.  After presenting a full argument accompanied by many case citations, the primary relief requested by Petitioner is for a merits-based ruling granting post-conviction relief and remanding to the Court of General Sessions for a new trial.  Only "in the alternative" does Petitioner request a remand to the PCR court for additional consideration of the issue.

Under these circumstances, I would accept Petitioner's invitation to resolve this appeal on the merits and thus avoid a needless remand.  The solicitor's comment to the jury neither amounted to a denial of due process nor was prejudicial, especially in the context of the entirety of the closing argument.  Petitioner's Golden Rule argument is similar to the argument addressed in *State v. Rice*, in which the court of appeals found no Golden Rule violation where the solicitor "asked the jury to give the victim's wife peace and the victim justice."  *State v. Rice*, 375 S.C. 302, 333, 336, 652 S.E.2d 409, 424, 426 (Ct. App. 2007), *overruled on other grounds by State v. Byers*, 392 S.C. 438, 710 S.E.2d 55 (2011).  As in *Rice*, the solicitor's closing argument in this case "did not call for the jurors to put themselves in the victim's place and did not rise to the level of a Golden Rule argument."  *Id*. at 336, 652 S.E.2d at 426.  Accordingly, I would find counsel was not deficient in failing to object.

Because there was no Golden Rule violation, I would affirm the PCR court in result.  I respectfully dissent.

**HEARN, J., concurs.**