23739

James PLYLER, Petitioner v. STATE of South Carolina, Respondent.

(424 S.E. (2d) 477)

Supreme Court

*Asst. Appellate Defender Joseph L. Savitz, III, South Carolina Office of Appellate Defense,* Columbia, *for petitioner.*

*Atty. Gen. T. Travis Medlock, Chief Deputy Atty. Gen. Donald J. Zelenka,* and *Asst. Atty. Gen. Teresa Nesbitt Cosby* Columbia, *for respondent.*

Submitted Sept. 22, 1992.

Decided Nov. 16, 1992.

CHANDLER, Justice:

We granted certiorari to review an Order denying Petitioner James Randall Plyler (Plyler) postconviction relief (PCR). We affirm.

Plyler was convicted of murder and armed robbery and sentenced to consecutive terms of life imprisonment and twenty-five years. This Court affirmed the sentences on direct appeal. *State v. Plyler,* Op. No. 85-MO-164 (S.C. Sup. Ct. filed July 1, 1985).

At the PCR hearing, Plyler alleged that trial counsel was ineffective for: failing to closely examine the victim's gun; failing to object to the admission of dye-stained money; failing to have Plyler's psychiatrist testify at trial; failing to call various members of the community as witnesses; and failing to present evidence of an illicit affair between the victim and Plyler's mother. The PCR court found that the trial record, along with testimony at the PCR hearing, conclusively refuted these allegations. Accordingly, he dismissed that portion of the application charging ineffective assistance of counsel.[1]

On certiorari to this Court, Plyler raises the issue of whether trial counsel was ineffective for failing to object to an erroneous malice charge. Since this issue was neither raised at the PCR hearing nor ruled upon by the PCR court, it is procedurally barred. *Hyman v. State,* 278 S.C. 501, 299 S.E. (2d) 330 (1983).

As to the merits of this allegation, it is well settled that to establish ineffective assistance of counsel, the petitioner must satisfy a two-prong test; first, he must

---

[1] The PCR court did grant the petition on Plyler's charges that the denial of earned work credits relative to parole eligibility violated his *ex post facto* rights. See *Elmore v. State,* 305 S.C. 456, 409 S.E. (2d) 397 (1991).

demonstrate that counsel's representation fell below an objective standard of reasonableness; second, he must prove there is a reasonable probability that, but for counsel's errors, the outcome of the trial court would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. (2d) 674 (1984).

We agree with Plyler that the trial judge's malice charge here impermissibly shifted the burden of proof from the State. The judge charged in part, that:

[M]alice is implied or presumed from the willful, deliberate, and intentional doing of an unlawful act without just cause or excuse. In other words, in it's [sic] general signification, malice means the doing of a wrongful act, intentionally, without justification or excuse. But even if facts proven are sufficient to raise a presumption of malice, such presumption would be rebuttable and it is for you, the jury, to determine from all of the evidence of the case whether or not it has been established beyond a reasonable doubt . . . Malice may be implied or presumed from the willful, deliberate, and intentional doing of an unlawful act without just cause or excuse. If one man, using or imploring a deadly weapon, deliberately and intentionally and without just cause or excuse, takes the life of another, malice will be presumed or implied. And further, ladies and gentlemen, even in the absence of a specific deliberate intent to take the life of a particular person or that of any person, malice may be implied or presumed from the conduct of the defendant in the use of or handling a deadly weapon, a dangerous instrumentality such as a pistol, shotgun, rifle, knife, or axe . . . [A]s I have told you, if the circumstances established by the evidence should be found sufficient to raise an implication or presumption of malice under any principle of law which has been stated to you, such presumption is rebuttable and it is always for the jury to say whether or not, under all of the evidence malice in fact has been established beyond a reasonable doubt.

Although certain portions of the malice charge are not incorrect, it is so diseased with burden-shifting presumptions that it violates *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450,

61 L.Ed. (2d) 39 (1979). *See also Francis v. Franklin*, 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed. (2d) 344 (1985). Counsel should have objected to the charge.

Given counsel's ineffective performance, we now address the question of whether Plyler was prejudiced by the erroneous charge. We hold he was not.

In *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed. (2d) 705 (1967), the United States Supreme Court held that a harmless error analysis can be applied to constitutional deprivations; however, ". . . before a federal constitutional error can be held harmless, the Court must be able to declare a belief that it was harmless beyond a reasonable doubt." 386 U.S. at 24, 87 S.Ct. at 828, 17 L.Ed. (2d) at 710-711. Upon review of a *Sandstrom* violation, the Court must find that the erroneous malice instruction did not contribute to the verdict based upon all the evidence presented to the jury. *Rose v. Clark*, 478 U.S. 570, 106 S.Ct. 3101, 92 L.Ed. (2d) 460 (1986) (applying *Chapman, supra,* to a burden-shifting malice instruction).

> To say that an error did not contribute to the verdict is . . . to find that error unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record. Thus, to say that an instruction to apply an unconstitutional presumption did not contribute to the verdict is to make a judgment about the significance of the presumption to reasonable jurors, when measured against the other evidence considered by those jurors independently of the presumption.

*Yates v. Evatt*, 500 U.S. —, —, 111 S.Ct. 1884, 1893, 114 L.Ed. (2d) 432, 448 (1991). *See also Arnold v. State of S.C.,* — S.C. —, 420 S.E. (2d) 834 (1992).

The facts here are, essentially, not in dispute. On May 31, 1983, Plyler and the victim, Mr. J.D. "Sole" Catoe, went target shooting together. Catoe, a friend of Plyler's family, was sixty-eight years old and in poor health. His vocal cords had been removed due to cancer and he experienced difficulty walking. He was known to carry large sums of cash.

Plyler testified at trial that he and Catoe began to argue while target shooting at a clearing in a wooded area. At this time, Catoe was in the driver's seat of his car with the door

closed; Plyler was standing beside the car on Catoe's side. Plyler stated that, as Catoe pointed a pistol at him, he turned and fatally shot Catoe twice at close range with his shotgun.

After killing Catoe, Plyler pushed the body to the floorboard of the car. He stole approximately $13,000 from the victim's body, along with the victim's pistol and other personal property. He then drove the victim's car from the clearing, and, after hiding it deep in the woods, walked back up to a road where he caught a ride.

Plyler then went to the home of Jimmy Riffe, a drug dealer and personal friend, where he purchased a large amount of valium using Catoe's money. He also sold Catoe's pistol to Riffe. Plyler returned home and gave his mother approximately $1,400 of Catoe's money. He later purchased a new motorcycle, also with the stolen money.

At trial, Riffe testified that, the week prior to the murder, Plyler told him that "somebody owed him a large sum of money and he was gone [sic] get it one way or another." The day before the murder, Plyler went to Riffe's house, purchased sixteen valium pills "on credit," and stated that he would have money the next day for one to two hundred more pills. He returned the next day, being the afternoon of the murder, and purchased 116 valium pills. At that time, he asked Riffe how to remove blood from his clothes and money, explaining that he and Catoe had killed someone.

Richard Ledford, a local taxidermist, testified that Plyler came to his shop the Monday before the murder and told him he would soon have the money for a deer head which Ledford had mounted. Plyler also stated that the would pay in advance for additional animals to be stuffed.

James Terry, an acquaintance of Plyler's, testified at trial that approximately two weeks before the murder, he and Plyler window-shopped at a "Harley-Davidson" motorcycle dealership in Charlotte, North Carolina. Plyler was very interested in a bright red "flashy" motorcycle. Late in the day of the murder, Plyler came by Terry's automobile repair shop, asking Terry if he would accompany him to Charlotte the next day to purchase the red motorcycle. Terry, knowing that Plyler was unemployed, asked how he was going to pay for the motorcycle. Plyler pulled a roll of hundred dollar bills from his pocket, telling Terry he had $9,000.

David D. Swearingen, the President of "Harley-Davidson" in Charlotte, testified that on June 1, 1983, Plyler purchased a bright red Harley-Davidson motorcycle with 72 one hundred dollar bills.

Plyler pled self-defense. However, on the stand he testified candidly that he had earlier thought of killing Catoe, notwithstanding he considered him a friend.

Given this uncontradicted evidence of malice aforethought, we find that Plyler's guilt was established beyond a reasonable doubt and the error in the malice charge was harmless beyond a reasonable doubt.

Moreover, since this issue was raised for the first time upon certiorari, Plyler's conviction and sentence is also affirmed on procedural grounds.

Affirmed.

HARWELL, C.J., and FINNEY, TOAL and MOORE, JJ., concur.