805 S.E.2d 568

Farid A. MANGAL, Respondent,

v.

STATE of South Carolina, Petitioner.

Appellate Case No. 2016-000610
Opinion No. 27726

Supreme Court of South Carolina.

Heard December 14, 2016
Filed July 19, 2017
Withdrawn, Substituted, and Refiled October 4, 2017

Attorney General Alan Wilson and Assistant Attorney General Alicia A. Olive, both of Columbia, for Petitioner.

John R. Ferguson, of Cox Ferguson & Wham, LLC, of Laurens, and C. Rauch Wise, of Greenwood, for Respondent.

Solicitor J. Strom Thurmond, Solicitor Barry J. Barnette and Amie Clifford, all of Columbia, for Amicus Curiae Solicitors' Association of South Carolina, Inc.

Suzanne B. Cole, of Spartanburg and Candice A. Lively, of Chester, for Amicus Curiae South Carolina Network of Children's Advocacy Centers and University of South Carolina Children's Law Center.

JUSTICE FEW:

Farid A. Mangal was convicted of criminal sexual conduct with a minor, lewd act upon a child, and incest. After his convictions were affirmed, Mangal filed this action for post-conviction relief (PCR). He argues trial counsel was ineffective for not objecting to improper bolstering testimony. The PCR court refused to rule on the improper bolstering issue because the court found Mangal did not raise it in his PCR application or at the PCR hearing. The court of appeals reversed, finding the improper bolstering issue was raised to the PCR court. The court of appeals then proceeded to grant PCR on the merits of the issue before it was considered by the PCR court. We reverse the court of appeals and reinstate the PCR court's order.

## I. Facts and Procedural History

The facts surrounding Mangal's sex crimes are set forth in detail in the court of appeals' opinion. *Mangal v. State*, 415 S.C. 310, 781 S.E.2d 732 (Ct. App. 2015). Focusing on those facts relevant to the specific issues in this appeal, the victim—Mangal's nineteen-year-old daughter—testified Mangal had been sexually assaulting her since she was ten years old. She described where, when, and how it happened. On cross-examination, trial counsel questioned the victim about inconsistencies in her testimony and suggested she had a motive to lie

about the sexual abuse—to gain freedom from Mangal's strict parenting. Mangal testified in his defense and claimed the victim and her mother fabricated the allegations.

Mangal's improper bolstering claim is based on the testimony of the State's witness Nancy Henderson, M.D., a pediatrician the trial court qualified as an expert "in the examination, diagnosis, and treatment of child sex abuse." Dr. Henderson testified she conducted a physical examination of the victim and discovered her "hymen tissue looked very, very normal" except for a "marked narrowing" at one spot.[1] Dr. Henderson concluded this was "a sign of some type of penetration." She then testified the victim had been "sexually abused," and that her opinion was "based on the history [the victim] shared with me and based on my examination." Trial counsel cross-examined Dr. Henderson in part by emphasizing her reliance on the victim's history—as opposed to the physical examination—in forming her opinion that the hymen injury resulted from sexual abuse.

The jury convicted Mangal of criminal sexual conduct with a minor in the first degree, criminal sexual conduct with a minor in the second degree (two counts), lewd act upon a child,[2] and incest. The trial court sentenced Mangal to thirty years in prison, and the court of appeals affirmed his convictions. *State v. Mangal*, Op. No. 2009-UP-113, 2009 WL 9528831 (S.C. Ct. App. filed March 4, 2009).

Mangal filed his PCR application without the assistance of counsel.[3] As required by section 17-27-50 of the South Carolina

---

1. Dr. Henderson explained the hymen "is a type of flexible tissue in the adolescent population that partially covers the vaginal opening."

2. This offense is now classified as criminal sexual conduct with a minor in the third degree under subsection 16-3-655(C) of the South Carolina Code (2015).

3. There is no provision of law for the appointment of counsel in a PCR proceeding unless the application raises questions of law or fact which the court determines require a hearing. *See* Rule 71.1(d), SCRCP ("If, after the State has filed its return, the application presents questions of law or fact which will require a hearing, the court shall promptly appoint counsel to assist the applicant if he is indigent."); *see also Whitehead v. State*, 310 S.C. 532, 535, 426 S.E.2d 315, 316 (1992) ("Rule 71.1(d) mandates the appointment of counsel for indigent PCR

Code (2014) and Rule 71.1(b) of the South Carolina Rules of Civil Procedure, he made the application on the form prescribed by this Court. *See* Form 5, SCRCP Appendix of Forms. In the blank requiring the applicant to "State concisely the grounds on which you base your allegation that you are being held in custody unlawfully," Mangal handwrote, (a) "ineffective assistance of counsel trial," (b) "prejudiceness," (c) "ineffective assistance of appellate counsel." In the blank requiring the applicant to "State concisely and in the same order the facts which support each of the grounds set out [above]," Mangal handwrote (a) "failure to preserve direct appeal issue," (b) "failed to investigate documentary evidence and witnesses," and (c) "fail to make an additional object[ion] to the sufficiency of the curative charge or moved for a mistrial." He also wrote "will amend pursuant to SCRCP, Rule 71.1" to include "new grounds upon appt. of PCR counsel," in apparent recognition that Rule 71.1(d) requires, "Counsel shall insure that all available grounds for relief are included in the application and shall amend the application if necessary."

Mangal was subsequently appointed counsel, and later retained a different attorney who represented him at the PCR trial, but no written amendment to Mangal's original application was filed. Mangal's counsel began the PCR hearing by calling witnesses, giving no indication to the PCR court he intended to raise any issues not set forth in the original application. During his presentation of evidence, PCR counsel asked trial counsel why he did not object to "improper bolstering" testimony given by Dr. Henderson, and the State briefly cross-examined him on the same subject. However, PCR counsel did not mention any intent to make an ineffective assistance claim based on a failure to object to improper bolstering testimony until the end of the hearing. At that point, he argued trial counsel was ineffective in several respects not mentioned in the original application, including for not objecting to the alleged improper bolstering testimony of Dr. Henderson.

The PCR court denied relief in a written order without addressing the improper bolstering issue. Mangal made a

applicants whenever a PCR hearing is held to determine questions of law or fact.").

motion under Rule 59(e) of the South Carolina Rules of Civil Procedure to alter or amend the judgment, arguing the PCR court should have addressed the improper bolstering issue. The PCR court denied the motion and held the improper bolstering issue was "not presented to the court in the application or in an amendment, and no testimonial evidence from the applicant was presented in support of these allegations."

Mangal filed a petition for a writ of certiorari seeking review of the denial of PCR, which we transferred to the court of appeals pursuant to Rule 243(*l*) of the South Carolina Appellate Court Rules. Mangal argued trial counsel was ineffective for not objecting to Dr. Henderson's testimony and the PCR court erred by not ruling on the issue. The court of appeals agreed the PCR court erred in not ruling on the improper bolstering issue. *Mangal*, 415 S.C. at 317-18, 781 S.E.2d at 735-36. The court of appeals then addressed the merits of the issue, finding Dr. Henderson's testimony was improper bolstering and counsel was ineffective for not objecting to it. 415 S.C. at 319-20, 781 S.E.2d at 736-37. The court of appeals remanded to the court of general sessions for a new trial. 415 S.C. at 319-20, 781 S.E.2d at 737. The State filed a petition for a writ of certiorari for review of the court of appeals' decision, which we granted.

## II. Standard of Review

 Our standard of review in PCR cases depends on the specific issue before us. We defer to a PCR court's findings of fact and will uphold them if there is any evidence in the record to support them. *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016) (citing *Jordan v. State*, 406 S.C. 443, 448, 752 S.E.2d 538, 540 (2013)). We do not defer to a PCR court's rulings on questions of law.[4] "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law." *Sellner*, 416 S.C. at 610, 787 S.E.2d at 527 (citing *Jamison v. State*, 410 S.C. 456, 465, 765

---

4. The court of appeals incorrectly stated "an appellate court 'gives great deference to the PCR court's ... conclusions of law,' " quoting our own incorrect statement in *Porter v. State*, 368 S.C. 378, 383, 629 S.E.2d 353, 356 (2006). *Mangal*, 415 S.C. at 316, 781 S.E.2d at 734. We clarify that appellate courts review questions of law de novo, with no deference to trial courts.

S.E.2d 123, 127 (2014)). On review of a PCR court's resolution of procedural questions arising under the Post-Conviction Procedure Act or the South Carolina Rules of Civil Procedure, we apply an abuse of discretion standard. *See Winkler v. State*, 418 S.C. 643, 663, 795 S.E.2d 686, 697 (2016) (applying an abuse of discretion standard to the trial court's decision on a motion for a continuance); *Sweet v. State*, 255 S.C. 293, 296, 178 S.E.2d 657, 658 (1971) (same).

### III. Presentation of the Improper Bolstering Issue

█ We first address the court of appeals' ruling that the improper bolstering issue was presented to the PCR court, and thus the PCR court erred in not ruling on it. We find the PCR court acted within its discretion in refusing to address the issue. First, the written application makes no mention of a claim based on improper bolstering, and no amendment to the written application was ever made. Second, PCR counsel began the hearing without mentioning there would be any additional claims for ineffective counsel beyond those listed in the original application. Third, even when PCR counsel questioned trial counsel on why he did not object to Dr. Henderson's testimony, he did not inform the PCR court he would make a claim for ineffectiveness based on the failure to make an objection.

Fourth, when PCR counsel did finally mention an ineffectiveness claim based on the testimony of Dr. Henderson, he did not make the claim with specificity. In what was essentially a closing argument, PCR counsel argued for relief on several unrelated grounds, and then stated,

> We also brought up the issue of Dr. Henderson. I believe in this case we have no case law specifically on allowing an expert to say in her opinion abuse occurred. She wasn't asked that question. She gave that answer. It did not receive an objection which we believe it should have. It was improper vouching.

There was no further discussion of any claim for ineffectiveness based on trial counsel not objecting to Dr. Henderson's testimony.

To the extent PCR counsel's brief statement constitutes a claim for ineffective assistance of counsel, we find a PCR

judge would have difficulty recognizing it. The entire evidentiary presentation at the PCR hearing regarding trial counsel's decision not to object to Dr. Henderson's testimony consisted of three points. First, the PCR court was informed that the State asked Dr. Henderson, "Do you have an opinion within a reasonable degree of medical certainty based on your education, training, and experience, and based on your findings on examination of the victim, whether those findings are consistent with a penetrating injury?" Second, PCR counsel immediately commented, "Which was an appropriate question under our law, I would think." Third, the PCR court was informed Dr. Henderson stated she "believed [the victim] had been abused." [5] Thus, the only evidentiary basis PCR counsel presented to support the premise that Dr. Henderson's testimony was improper bolstering was the fact Dr. Henderson gave her opinion—based in part on physical findings from an objective medical examination—that the victim suffered a penetrating injury resulting from sexual abuse.

In its opinion concluding Dr. Henderson's testimony was improper bolstering, the court of appeals relied on several additional portions of Dr. Henderson's testimony that were not revealed to the PCR court at any point during the PCR hearing. First, the court of appeals relied on the fact Dr. Henderson testified she considered "the history that [Victim] gave [her]" in reaching her opinion the victim had been abused. 415 S.C. at 319, 781 S.E.2d at 736. However, the PCR hearing transcript contains no mention of this testimony. Second, most of the testimony the court of appeals relied on to support its conclusion Dr. Henderson's testimony was improper bolstering was actually elicited by trial counsel on cross-examination. There was no reference to any of that testimony during the PCR hearing.

Finally with regard to the PCR court's exercise of discretion in refusing to address the improper bolstering issue, Mangal filed a Rule 59(e) motion asking the PCR court to consider the

---

5. Mangal's PCR counsel inaccurately quoted Dr. Henderson's testimony. She never used the word "believed." Instead, she stated, "Based on the history that she shared with me and based on my examination I felt that it was consistent with a, that she had been abused." She was then asked, "Also opinion as to whether she was sexually abused, that opinion is," and she replied, "That she had been, yes, sir."

claim. The PCR court denied the motion, finding "no testimonial evidence ... was presented in support of these allegations." We agree with the PCR court. The most generous interpretation of the improper bolstering claim—as counsel described it to the PCR court in closing argument and in the Rule 59(e) motion [6]—limits the claim to the failure to object to Dr. Henderson's direct examination opinion testimony. That testimony provides no support for the claim other than Dr. Henderson considered the victim's history—in addition to her objective findings—in reaching her opinion that the penetrating injury resulted from sexual abuse. Notably, however, Dr. Henderson did not repeat to the jury the victim's history.

From a procedural standpoint, the court of appeals relied on *Simpson v. Moore*, 367 S.C. 587, 627 S.E.2d 701 (2006), which it found "similar" to this case, to support its conclusion the PCR court erred by not ruling on the improper bolstering issue. *Mangal*, 415 S.C. at 317, 781 S.E.2d at 735. *Simpson* is similar to this case in that the PCR court refused to rule on a PCR claim "because Simpson did not specifically raise it in his PCR application." 367 S.C. at 599, 627 S.E.2d at 707. Also similar to this case, Simpson filed a Rule 59(e) motion challenging the PCR court's refusal to rule on the issue. 367 S.C. at 600 n.3, 627 S.E.2d at 708 n.3. We held "Simpson should have been permitted to amend his PCR application to conform to the evidence presented." 367 S.C. at 599, 627 S.E.2d at 708.

However, there are significant dissimilarities between *Simpson* and this case. First, *Simpson* was an appeal from a three and one-half day PCR hearing, and PCR counsel's intention to pursue the disputed issue was made clear *during* the PCR hearing. The issue concerned an alleged *Brady* [7] violation involving a bag of money, which trial counsel testified he learned of "two hours before testifying" at the PCR trial,[8]

6. Mangal's current PCR appellate counsel did not represent him at the PCR hearing or in filing the Rule 59(e) motion.

7. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

8. In *Simpson*, we stated, "Simpson's defense counsel ... testified that he learned about the bag of money *only* two hours before testifying." 367 S.C. at 599, 627 S.E.2d at 707. We used the word "only" to emphasize the merit of the *Brady* claim—that trial counsel was never informed of exculpatory information. We did not mention it in relation

and the State knew about it in time to present a witness "whom the State called for the specific purpose of addressing the ... issue." 367 S.C. at 599, 627 S.E.2d at 707. The PCR court also left the record open in *Simpson* for the State to submit additional evidence. 367 S.C. at 608, 627 S.E.2d at 712. Here, on the other hand, the State had no notice Mangal intended to pursue the claim until the end of the hearing, after all the evidence had been presented. Though the State did conduct a brief cross-examination of trial counsel on his decision not to object to Dr. Henderson's testimony, the State had little reason to suspect her testimony would form part of the basis of a PCR claim yet to be made.

Second, the PCR court in *Simpson* made a specific finding as to the merits of the *Brady* claim, stating "the contents of the bag could have been exculpatory," and "this evidence should have been preserved and, thus, been subject to discovery." 367 S.C. at 599, 627 S.E.2d at 707. We observed, "Despite this finding, the [PCR] court ruled that the issue about the bag of money was not preserved for review because Simpson did not specifically raise it in his PCR application." *Id.* Here, the PCR court made no such finding on the merits of the improper bolstering issue.

Finally, we specifically relied in *Simpson* on Rule 15(b) of the South Carolina Rules of Civil Procedure, under which—we stated—"pleadings may be amended, even after judgment, to conform to issues tried by express or implied consent but not raised in the original pleadings." 367 S.C. at 599, 627 S.E.2d at 708 (citing Rule 15(b), SCRCP). The focus of a Rule 15(b) analysis is prejudice to the opposing party. *See Harvey v. Strickland*, 350 S.C. 303, 313, 566 S.E.2d 529, 535 (2002) (holding Rule 15(b) "[a]mendments to conform to the proof should be liberally allowed when no prejudice to the opposing party will result."). We analyzed prejudice in *Simpson*, holding "the State would not be prejudiced by such an amendment given that the State cross-examined Simpson's defense counsel on the issue and was permitted to present its own witness ... to contest the issue's relevance." *Simpson*, 367 S.C. at 599, 627

---

to the late indication of an intent to pursue the PCR claim. The important fact here is that the applicant's intent to pursue the claim was clear *during* the PCR hearing.

S.E.2d at 708. The court of appeals did not mention any prejudice analysis in this case before relying on *Simpson* to find error in the PCR court's refusal to allow an amendment.

## IV. Excusing Procedural Default in PCR Proceedings

There have been rare cases in which we have excused PCR applicants from procedural failures such as occurred in this case. In *Simmons v. State*, 416 S.C. 584, 788 S.E.2d 220 (2016), for example, the PCR applicant properly amended his application to assert "a claim that the State violated his due process rights by presenting false evidence to the jury" with its presentation of DNA evidence. 416 S.C. at 589, 788 S.E.2d at 223. The PCR court granted relief on another issue, as a result of which the applicant's death sentence was vacated. 416 S.C. at 586, 788 S.E.2d at 222. The PCR court "summarily denied the remaining claims, including Simmons's challenge to the DNA evidence, 'as without merit.'" 416 S.C. at 591, 788 S.E.2d at 224. As to the summary denial of those claims, "Simmons failed to file a Rule 59, SCRCP motion, as our issue-preservation rules require." *Id.*; *see Marlar v. State*, 375 S.C. 407, 410, 653 S.E.2d 266, 267 (2007) (holding that when a PCR court fails to make specific findings as to an issue, a Rule 59(e) motion is necessary to preserve the issue for appeal). We held that although the State was "technically correct" to argue Simmons' DNA claim was procedurally barred, "dismissing the writ of certiorari would be fundamentally contrary to the interests of justice." *Simmons*, 416 S.C. at 591, 788 S.E.2d at 224. We remanded the case to the PCR court for a new trial on the DNA claim. 416 S.C. at 593-94, 788 S.E.2d at 225.

Our ruling in *Simmons* was based on the State's presentation—though innocent—of false evidence underlying the State's analysis of DNA. 416 S.C. at 591, 788 S.E.2d at 224. We relied on precedent from the Supreme Court of the United States and this Court to support the need for the "extraordinary action" we took under that circumstance to excuse the procedural bar. 416 S.C. at 591-92, 788 S.E.2d at 224 (citing *Napue v. Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221 (1959) and *Riddle v. Ozmint*, 369 S.C. 39, 47-48, 631 S.E.2d 70, 75 (2006)).

In most PCR cases, however, we have refused to excuse the pleading and issue-preservation requirements that apply in all civil cases. In *Aice v. State*, 305 S.C. 448, 409 S.E.2d 392 (1991), for example, we refused to relax procedural requirements simply "on the ground that his first . . . PCR application was insufficient due to ineffective PCR counsel." 305 S.C. at 448, 409 S.E.2d at 393. In *Plyler v. State*, 309 S.C. 408, 424 S.E.2d 477 (1992), the applicant attempted to raise on appeal for the first time a burden-shifting claim based on trial counsel's failure to object to the trial court's malice charge. 309 S.C. at 409, 424 S.E.2d at 478. As to the merits of the claim, we found "the malice charge . . . is so diseased with burden-shifting presumptions that it violates *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979)." *Plyler*, 309 S.C. at 410-11, 424 S.E.2d at 478. Nevertheless, we affirmed the denial of PCR, stating, "Since this issue was neither raised at the PCR hearing nor ruled upon by the PCR court, it is procedurally barred." 309 S.C. at 409, 424 S.E.2d at 478. In *Marlar*, we reversed the court of appeals for addressing an issue not specifically addressed in a PCR order when the applicant did not make a motion to alter or amend pursuant to Rule 59(e). 375 S.C. at 410, 653 S.E.2d at 267. We stated, "Because respondent did not make a Rule 59(e) motion . . ., the issues were not preserved for appellate review, and the Court of Appeals erred in addressing the merits of the issues. . . ." *Id.*; *see also Humbert v. State*, 345 S.C. 332, 337, 548 S.E.2d 862, 865 (2001) (stating the failure to file a Rule 59(e) motion as to an issue not addressed by the PCR court leaves the issue unpreserved).

We have often considered the tension between the rights at stake in PCR proceedings and the application of traditional procedural requirements for the presentation and preservation of issues. *See, e.g., Robertson v. State*, 418 S.C. 505, 795 S.E.2d 29 (2016); *Odom v. State*, 337 S.C. 256, 523 S.E.2d 753 (1999). The Supreme Court of the United States recently addressed this tension in *Martinez v. Ryan*, 566 U.S. 1, 132 S.Ct. 1309, 182 L.Ed.2d 272 (2012). The issue in *Martinez* was "whether a federal habeas court may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding." 566 U.S. at 5, 132 S.Ct. at

1313, 182 L.Ed.2d at 280. After Martinez was convicted in the state court of Arizona of two counts of criminal sexual conduct with a minor, the state appointed new counsel for the direct appeal. 566 U.S. at 5-6, 132 S.Ct. at 1313-14, 182 L.Ed.2d at 280. While the direct appeal was pending, Martinez's newly-appointed counsel initiated a state PCR proceeding. 566 U.S. at 6, 132 S.Ct. at 1314, 182 L.Ed.2d at 280. However, counsel made no claim of ineffective assistance of trial counsel, and later filed a statement asserting there were "no colorable claims at all." 566 U.S. at 6, 132 S.Ct. at 1314, 182 L.Ed.2d at 280-81. The state court dismissed the PCR action. 566 U.S. at 6, 132 S.Ct. at 1314, 182 L.Ed.2d at 281.

Later, Martinez filed a second PCR action in state court with new counsel, this time asserting trial counsel provided ineffective assistance. 566 U.S. at 6-7, 132 S.Ct. at 1314, 182 L.Ed.2d at 281. The state court dismissed this PCR action, finding Martinez was procedurally barred from pursuing ineffective assistance claims that should have been asserted in his first PCR action. 566 U.S. at 7, 132 S.Ct. at 1314, 182 L.Ed.2d at 281. Martinez subsequently filed a writ of habeas corpus in federal court, again raising the ineffective assistance of counsel claims. *Id.* The district court refused to address the claims on the ground they were barred by procedural default in state court, and "Martinez had not shown cause to excuse the procedural default." 566 U.S. at 7-8, 132 S.Ct. at 1315, 182 L.Ed.2d at 281. After the Ninth Circuit affirmed, the Supreme Court granted certiorari. 566 U.S. at 8, 132 S.Ct. at 1315, 182 L.Ed.2d at 282.

The Supreme Court held "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." 566 U.S. at 17, 132 S.Ct. at 1320, 182 L.Ed.2d at 288. In doing so, the Court recognized the right to the effective assistance of trial counsel is a "bedrock principle in our justice system," and acknowledged applicants "confined to prison" and "unlearned in the law" often have difficulty complying with procedural rules in a PCR case. 566 U.S. at 12, 132 S.Ct. at 1317, 182 L.Ed.2d at 284. The Court then stated,

Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the

absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim.

566 U.S. at 14, 132 S.Ct. at 1318, 182 L.Ed.2d at 285-86.

We first considered *Martinez* in *Kelly v. State*, 404 S.C. 365, 745 S.E.2d 377 (2013). We held *Martinez* "is limited to federal habeas corpus review and is not applicable to state post-conviction relief actions." 404 S.C. at 365, 745 S.E.2d at 377. We considered *Martinez* again in *Robertson*. Reaffirming *Kelly*, we held "*Martinez* does not afford Petitioner a right to file a successive PCR application by merely alleging ineffective assistance of prior PCR counsel." 418 S.C. at 516, 795 S.E.2d at 34. In *Robertson*, however, we permitted the PCR applicant to pursue a successive application the PCR court found was procedurally barred. 418 S.C. at 516, 795 S.E.2d at 34.

█ The Supreme Court's decision in *Martinez* reminds us that the Sixth Amendment guarantee of effective assistance of counsel is a "bedrock principle in our justice system." *Simmons* and *Martinez* counsel us that there are situations where the interests of justice require PCR courts to be flexible with procedural requirements *before* PCR applicants suffer procedural default on substantial claims. Such flexibility is consistent with the purpose and spirit of our Rules of Civil Procedure.[9] These considerations should guide PCR courts when struggling to balance procedural requirements against the importance of the issues at stake in PCR proceedings. We

---

9. *See* 4 Charles Alan Wright, Arthur R. Miller & Adam N. Steinman, *Federal Practice and Procedure* § 1029 (4th ed. 2015) ("The federal rules are designed to discourage battles over mere form and to sweep away needless procedural controversies that either delay a trial on the merits or deny a party his day in court because of technical deficiencies."); *Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016) ("In construing the South Carolina Rules of Civil Procedure, our Court looks for guidance to cases interpreting the federal rules."); 3 *Cyclopedia of Federal Procedure* § 8.2 (3d ed., rev. 2017) ("The spirit of the Rules is to settle controversies upon their merits rather than to dismiss actions on technical grounds, to permit amendments liberally, and to avoid, if possible, depriving a litigant of a chance to bring a case to trial.").

encourage trial courts in PCR cases to use the discretion we grant them on procedural matters to find reasonable ways—within the flexibility of our Rules—to reach the merits of substantial issues.

■ As we stated in *Odom* and repeated in *Robertson*, "All applicants are entitled to a full and fair opportunity to present claims in one PCR application." *Robertson*, 418 S.C. at 513, 795 S.E.2d at 33; *Odom*, 337 S.C. at 261, 523 S.E.2d at 755.

### V. The Procedural Default in This Case

■ This is not an appropriate case in which to excuse Mangal from his procedural default. As we explained, the PCR court acted within its discretion to refuse to address any claim based on Dr. Henderson's direct examination testimony. In addition to that testimony, however, the court of appeals relied on Dr. Henderson's cross-examination testimony to support its conclusion of improper bolstering. This testimony does not convince us to excuse the procedural default.

First, none of it was presented to the PCR court at the hearing. In addition, the State makes a convincing argument that trial counsel elicited this testimony intentionally pursuant to a valid trial strategy. *See Watson v. State*, 370 S.C. 68, 72-73, 634 S.E.2d 642, 644 (2006) (finding counsel's performance was not deficient in making the decision not to object to "inadmissible" testimony because his strategy—that doing so "might lead to the more damaging introduction" of other evidence—was valid).

Trial counsel testified this was "not the first time I've been with Dr. Henderson." When asked if he expected Dr. Henderson to give an opinion on whether the victim had been sexually abused, trial counsel answered, "Not only did I expect it, but if she had answered any other way I would have been shocked, because Dr. Henderson's testimony is canned testimony. And she'll testify the same way in every trial." The State argues trial counsel, knowing Dr. Henderson would give an opinion the victim had been sexually abused, attempted to undermine her opinion by demonstrating to the jury that Dr. Henderson's opinion was not based on the objective results of her physical examination, but rather on the victim's fabricated

statements. The State argues trial counsel then intentionally invited Dr. Henderson to admit she based her opinion on the truth of what the victim told her. According to the State, this allowed trial counsel to impeach Dr. Henderson's opinion with the weaknesses he had previously shown in the victim's credibility. Otherwise, the State argues, trial counsel was left with an expert opinion based only on objective physical findings—a far more difficult opinion to impeach. We need not decide whether this was a valid trial strategy.[10] We simply find this evidence does not support the extraordinary action of excusing Mangal's procedural default.

## VI. Conclusion

We **REVERSE** the court of appeals' finding that the PCR court erred in refusing to address the improper bolstering issue, and **REINSTATE** the PCR court's order denying PCR.

KITTREDGE, J., concurs. BEATTY, C.J., HEARN, J., and Acting Justice Costa M. Pleicones concur in result only.

---

**10.** If we were to excuse the procedural default for failing to present this claim to the PCR court, it would be necessary to remand to the PCR court for a hearing because the PCR court was not given the opportunity to make factual findings as to the reasonableness of this strategy, and if found not to be a reasonable strategy, whether the applicant suffered prejudice. *See Simmons,* 416 S.C. at 593, 788 S.E.2d at 225 ("We sit today in an appellate capacity and making findings of fact de novo would be contrary to this appellate setting.").