# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE )
)
v. )
) Case No. 1402016580
DUEVORN D. HARRIS, )
)
Defendant. )

Submitted: January 8, 2018
Decided: March 12, 2018

Matthew Hicks, Esquire
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801
*Attorney for the State of Delaware*

Joseph Hurley, Esquire
Attorney At Law
1215 King Street
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

**SMALLS, C.J.**

# FACTUAL AND PROCEDURAL HISTORY

On February 25, 2014, Duevorn Harris ("Defendant") was arrested and charged with the offenses of Driving While Under the Influence of Alcohol (DUI) in violation of 21 *Del. C.* §4177, Failure to Stop at a Red Light in violation of 21 *Del. C.* §4108(a)(3)(a), and Failure to Obtain Residence License within Sixty (60) days in violation of 21 *Del. C.* §2704(a). Defendant failed to appear for his arraignment on May 9, 2014, after which a warrant was issued and subsequently returned on August 25, 2014. At the September 16, 2014 arraignment, the Defendant entered a plea of not guilty and the matter was scheduled for case review on October 10, 2014, where Defendant elected a jury trial but afterward elected to participate in the DUI Treatment Court Program, ("DUI Program"). Thereafter, the case was rescheduled several times for jury trial.

On January 30, 2015, Defendant filed a Motion to Suppress which was withdrawn on March 15, 2016. On May 19, 2017, Defendant entered a plea to DUI 2nd Offense and was sentenced pursuant to 21 *Del. C.* §4177(d)(2), into the DUI Program in the Court of Common Pleas. When Defendant was interviewed by the Probation Intake office it was discovered that Defendant had relocated to Kent County. This change in residence rendered him ineligible for the New Castle County DUI Program. On June 23, 2017, Defendant filed a Motion to Withdraw his Plea and Application for admission to the DUI Program which was granted. The case was restored to the jury trial calendar.

On November 14, 2017, before trial commenced, Defendant moved for reconsideration of his decision for entry into the DUI Program which was denied. Defendant waived his right to a trial by jury and the matter proceeded with a bench trial.

1

The facts which led to Defendant's arrest are the following. Delaware State Trooper Austin Andres ("Andres") testified he was on patrol the night of February 25, 2014 in Newark, Delaware when he observed a vehicle drive through a red light. Andres pulled the vehicle over which was driven by Defendant. Andres testified he detected an odor of alcohol emanating from the vehicle, the Defendant's eyes were bloodshot and glassy, and his speech was slurred.

Based on these suspicions, Andres had Defendant perform field sobriety tests. During the field sobriety tests, Defendant was unable to maintain his balance and continued to drop his arms and foot. In accordance with his training and experience, Andres concluded Defendant was under the influence of alcohol. Subsequently, Defendant was taken into custody and transported to Troop 2 where Andres administered an Intoxilyzer test. The test revealed a Blood Alcohol Content of .163. Thereafter, Defendant was arrested and charged with the above offenses

At the beginning of trial, Defense counsel stipulated that the officer had reasonable articulable suspicion to stop the vehicle, and that the officer had probable cause to arrest the Defendant. Defense counsel further stipulated the Intoxilyzer machine was properly calibrated, the calibration logs were accurate, and the Intoxilyzer card was proper. During trial, the State admitted three (3) Exhibits. Andres testified he is employed as a Trooper with the Delaware State Police and received DUI training as part of his employment. Andres further testified that on February 25, 2014, he observed Defendant proceed through a red light and when he pulled him over, he detected a strong odor of alcohol coming from Defendant's vehicle, his eyes were bloodshot and glassy and the Defendant's speech was

2

slurred. In addition, Andres testified he administered the field tests according to the National Highway Traffic Safety Association (NHTSA) standards and based on the results and his observations, he arrested the Defendant for suspicion of DUI and transported him to Troop 2.

During cross-examination, Defense counsel questioned Andres regarding his recollection of the Defendant since the arrest occurred around three-and-a-half years ago. Defense counsel also questioned Andres as to his procedure in administering the field sobriety tests of Defendant. On redirect, Andres testified that Defendant was swaying and held onto the door as he exited his vehicle. Andres further testified that Defendant stated he understood the instructions of the field sobriety tests, though he started the tests before instructed. Andres also testified during the field sobriety tests, Defendant was unable to keep his balance.

While at Troop 2, Andres testified the Defendant was observed for twenty (20) minutes before he administered the Intoxilyzer test which indicated a Blood Alcohol Content of .163.[1] Andres testified he used his cell phone for the time to start the twenty (20) minute observation period, which began at 0312 hours, and used the Intoxilyzer machine to indicate the time to end the observation period, which was at 0346 hours. Andres further testified the Defendant was subjected to the Intoxilyzer test within one (1) hour after the Defendant was seen in control of his vehicle. Moreover, the State admitted calibration checks of the Intoxilyzer machine before and after the Defendant's test.[2] Defense counsel

---

[1] State's *Exhibit 3*.
[2] State's *Exhibit 1* and *Exhibit 2*.

3

objected to Andres testifying to the procedure of how the Intoxilyzer calibrations were conducted.

During closing arguments, the Court questioned the defense's position since at the beginning of the trial, Defendant stipulated to the Intoxilyzer test and is subsequently arguing the test involved an invalid protocol. Defendant contended that the stipulation to the Intoxilyzer calibrations does not include the procedures of how the testing was performed. The Court stated that stipulating to the Intoxilyzer card indicates you stipulate to the procedure and the results, therefore, questioning the subsequent results is inconsistent. Lastly, Defense counsel stated he would never stipulate to an Intoxilyzer procedure before the officer testifies because he does not know the process behind the results. At the conclusion of trial, the matter was taken under advisement.

On November 27, 2017, Defendant filed post-trial submissions requesting permission to supplement closing arguments. In its submission, Defendant's counsel admits to have overlooked a vital component of the foundational requirements that must be established in this case.[3] Defendant asks the Court to disregard the Intoxilyzer tests results and enter a verdict of not guilty on the basis that the Intoxilyzer results do not provide a proper foundation for proof beyond a reasonable doubt.

On January 22, 2018, the Court wrote a letter to the State inquiring if they had a response to Defendant's post-trial submissions. The State replied they did not wish to have a hearing on the post-trial submission and for the Court to rule on the case as it stands.

---

[3] Defendant's Post-Trial Arguments, pg. 4.

## DISCUSSION

At the commencement of trial on November 14, 2017, the State and Defendant stipulated to the admission of the Intoxilyzer calibration records[4] and the test results of the Intoxilyzer test, which indicated a blood and alcohol content of .163.[5] Afterwards, the Court inquired what issue remained for trial, to which defense counsel responded, "guilt or innocence." The Court had previously ruled the officer had probable cause to take the Defendant into custody.

Title 11 *Del. C.* § 4177(a)(1) provides that, "[n]o person shall drive a vehicle . . . when the person is under the influence of alcohol." Section (a)(4) adds, "…that no person shall operate a motor vehicle when the person's alcohol concentration is .08 or more."[6] In order for a person to be found guilty under §4177, the State must prove, beyond a reasonable doubt, that the defendant was driving and that he was under the influence of alcohol or drugs while he was driving.[7]

In Defendant's post-trial submission, he argues, the "fatal flaw" in the State's case is utilizing two separate, and not calibrated, time instruments to measure the observation period. Defendant reasons that this is a foundational defect which must preclude admissibility of the blood alcohol test results."[8] Furthermore, Defendant argues that the use of separate instrument to measure the observation period with reference to the Intoxilyzer, officiates the requirement of a twenty (20) minute observation period. Defendant argues

---

[4] State's *Exhibits 1* and *Exhibit 2.*
[5] State's *Exhibit 3.*
[6] Del. Code Ann. tit. 21, § 4177 (West).
[7] *Lewis v. State*, 626 A.2d 1350, 1355 (Del. 1993).
[8] Defendant's Post-Trial Arguments, pg. 1.

because Andres used his cell phone to begin the twenty (20) minute observation period and the Intoxilyzer machine to conclude the required time, the clocks are not synchronized and do not provide proof that the Defendant was actually observed for twenty (20) minutes.[9]

Defendant's post-trial arguments recognize the departure from orderly trial practice in the interest of justice and rely on *Mangal v. State* where the court held that "[T]here are situations where the interest of justice require ... courts to be flexible with procedural requirements before ... applicants suffer procedural default on substantial claims."[10] This South Carolina case involved post-conviction relief proceedings. Furthermore, Defendant argues in a footnote that "this situation is not a requirement where the Court will expend extra legal energy than would have been utilized in the initial analysis, but rather only the sequence of consideration of arguments."[11] Defense counsel begs that "justice requires the hapless client not pay the price by complete deprivation of his liberty because of an attorney's error."[12]

Defendant's post-trial arguments seek to supplement and elaborate on the use of instruments involved to determine the twenty (20) minute observation period since defense counsel had no way of knowing that it would be now become an issue in this case. Defendant cites this Courts opinion in *State v. Barclift*[13] where the officer used his cell phone to determine the beginning of the observation period and the Intoxilyzer machine clock as the end time. The Court held "the use of different time insturments to determine the

---

[9] *Id.*
[10] *Mangal v. State*, 421 S.C. 85, 99, 805 S.E.2d 568, 575 (2017).
[11] Defendant's Post-Trial Arguments, pg. 3, fn. 3.
[12] *Id* at pg. 4, (fn. 4; Defendant adds "sanctions should be directed at miscreant-attorney rather than the victim-client).
[13] 2011 WL 7563024 (Del. Com. Plea, Aug. 19, 2011).

observation period failed to satisfy the twenty (20) minute observation requirement because the clocks were not coordinated or syncronized."[14] Thus, the Court suppressed the results of the Intoxilyzer.

Here, the fatal flaw in Defendant's case is the fact that defense counsel stipulated to all the State's Exhibits prior to trial. Despite this, Defense counsel argues that he only stipulated to the admission of the Intoxilyzer card. Thus, he did not stipulate that it was the result of a valid protocol. The Court finds this disingenuous. Stipulating to the Intoxilyzer card includes its admission to evidence and acceptance that the results were performed properly. Defense counsel waived his right to argue this issue post-trial. Defendant's stipulation is conclusive on those issues in this case. In addition, Defense counsel stated that the issue at trial was "guilt or innocence" in which the State has proved beyond a reasonable doubt. This proof is evident because the statute provides that where the persons's alcohol concentration is .08 or more, that person is guilty under the statute.

## CONCLUSION

For the reasons discussed above, Defendant's post-trial argument submission lacks merit and is **DENIED**. I find that the facts in the record prove beyond a reasonable doubt the Defendant disregarded the red light, failed to obtain a resident license within sixty (60) days, and was operating his vehicle while under the influence of alcohol.

ACCORDINGLY, Defendant is found guilty on each offense. The Clerk shall schedule these matters for sentencing.

---

[14] *Barclift* at *2.

**IT IS SO ORDERED.**

_____
Alex J. Smalls,
Chief Judge

8