# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Derrick Miller, Petitioner,

v.

State of South Carolina, Respondent.

Appellate Case No. 2023-000470

---

Appeal From Spartanburg County
Brian M. Gibbons, Circuit Court Judge

---

Opinion No. 6136
Submitted November 3, 2025 – Filed February 11, 2026

---

### REVERSED

---

Appellate Defender Jessica M. Saxon, of Columbia, for
Petitioner.

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia, for Respondent.

---

**WILLIAMS, C.J.:**  In this action for post-conviction relief (PCR), Derrick Miller
pled guilty via Webex to domestic violence of a high and aggravated nature for
shooting his girlfriend.  The PCR court denied Miller's PCR application, and this
court granted his petition for writ of certiorari to review the PCR court's finding
that plea counsel was not ineffective for failing to establish a direct line of
communication during the plea.  We reverse.

## FACTS/PROCEDURAL HISTORY

At the beginning of the guilty plea, on January 6, 2021, the trial court noted the proceeding was being held via Webex because of the coronavirus pandemic. The trial court told Miller to alert him immediately if he could not hear the trial court or other participants. The trial court asked Miller about his family, education, and employment. The trial court asked if Miller was under the influence of drugs or had a drug abuse problem. Miller affirmed he was satisfied with the work his attorney performed for the case. He affirmed he understood his right to a jury trial, that he did not wish to have a jury trial, and that his plea was free and voluntary. The trial court told Miller that in pleading guilty, Miller would

> give up your right to confront and cross-examine the State's witnesses. You also give up your right to present evidence which you or your lawyer might feel establishes a defense, meaning you have to give up your right of subpoena as well as your right to remain silent. And you wish to give up all those rights?

Miller stated "yes." Miller agreed with the State's recitation of the facts and affirmed the trial court was not bound by any sentencing recommendation from the State. The trial court stated "I could sentence you up to [twenty] years at the Department of Corrections? Do you understand that?" Miller agreed and stated he understood the charge he was pleading to was classified as a violent and serious offense. Miller affirmed his guilt to the trial court.[1]

Plea counsel spoke to the trial court on Miller's behalf, and the trial court asked Miller if he agreed with the statements made by his lawyer. Miller agreed, and when asked by the trial court if there was "anything else that you would like to say or want me to know or consider," Miller stated "[n]o your honor. Not at this time." The trial court replied "well, I appreciate that sentiment, but, Mr. Miller, this is - - there's not another time where you have the opportunity to speak to me about the sentence, and so is there anything that you can think of that you want to share with me?" Miller then spoke of his remorse for his actions.

The State advised the trial court that it was unable to reach a negotiated plea but recommended a sentence of twenty years' imprisonment suspended on the service

---

[1] Miller shot his girlfriend as she was holding a lighter and threatening to burn his belongings. He stated at the time of the incident that "getting shot in the leg might hurt like hell, but it's not gonna kill anyone."

of between ten- and fifteen-years' imprisonment and five years' probation. The trial court accepted the State's recommendation suspended upon the service of fifteen years' imprisonment.

In his amended PCR application, Miller argued plea counsel was ineffective for failing to establish communication between Miller and counsel during the plea or requiring the court to establish a line of communication. At the in-person PCR hearing, Miller stated that he was at the Spartanburg County Detention Center during the guilty plea, he did not know where his counsel was, and he did not have access to his counsel during the plea. He stated the deputies at the detention center told him he could not speak while the trial court was talking. Miller said he told the trial court that he was satisfied with counsel even though he was not because he was "just trying to get this thing over and done with." Miller admitted he was originally charged with attempted murder and could face at least ten more years' incarceration if his PCR was successful and he went to trial.

Plea counsel testified that he was at his office during the guilty plea and there was only one line of communication on the Webex guilty plea call. Plea counsel was not aware whether Miller knew he had to request a line of communication with him during the plea. Plea counsel was not sure whether the trial court was supposed to establish a line of communication between attorney and client during the Webex call. Plea counsel noted that in the weeks leading up to the guilty plea, he discussed with Miller the weaknesses in his case and Miller's nonchalant attitude about the shooting. Plea counsel believed it would be difficult to establish an effective defense when there were no burn marks on Miller's belongings and with Miller having stated to others he would do it again. Plea counsel stated it was Miller's decision to plead guilty and that Miller understood the plea process.

The PCR court found plea counsel was not deficient for failing to ensure there was a direct line of communication between counsel and Miller during the plea. The PCR court found there was no denial of the right to speak to counsel. The court stated, "even if there was a denial of communication, there has been no showing of prejudice." This appeal followed.

**ISSUE ON APPEAL**

Did the PCR court err in finding plea counsel was not ineffective for failing to establish a required line of communication with Miller during the coronavirus-era Webex guilty plea?

**STANDARD OF REVIEW**

"Our standard of review in PCR cases depends on the specific issue before us." *Mangal v. State*, 421 S.C. 85, 91, 805 S.E.2d 568, 571 (2017). "We will not uphold a PCR judge's findings if there is no evidence of probative value in the record to support those findings." *Higgins v. State*, 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992). "[Appellate courts] do not defer to a PCR court's rulings on questions of law." *Mangal*, 421 S.C. at 91, 805 S.E.2d at 571. "Questions of law are reviewed de novo, and we will reverse the PCR court's decision when it is controlled by an error of law." *Id.* (quoting *Sellner v. State*, 416 S.C. 606, 610, 787 S.E.2d 525, 527 (2016)).

**LAW/ANALYSIS**

"The applicant in a PCR hearing bears the burden of establishing he is entitled to relief." *Goins v. State*, 397 S.C. 568, 573, 726 S.E.2d 1, 3 (2012). "In addressing the adequacy of a PCR applicant's guilty plea, it is proper to consider both the guilty plea transcript and the evidence presented at the PCR hearing." *Sellner*, 416 S.C. at 611, 787 S.E.2d at 527.

> Specifically, the voluntariness of a guilty plea is not determined by an examination of a specific inquiry made by the sentencing judge alone, but is determined from both the record made at the time of the entry of the guilty plea, and also from the record of the PCR hearing.

*Holden v. State*, 393 S.C. 565, 573, 713 S.E.2d 611, 615 (2011) (quoting *Roddy v. State*, 339 S.C. 29, 33, 528 S.E.2d 418, 420 (2000)), *abrogated on other grounds by, Smalls v. State,* 422 S.C. 174, 810 S.E.2d 836 (2018). "To find a guilty plea is voluntarily and knowingly entered into, the record must establish the defendant had a full understanding of the consequences of his plea and the charges against him." *Holden*, 393 S.C. at 572, 713 S.E.2d at 615 (quoting *Roddy*, 339 S.C. at 33, 528 S.E.2d at 421). Before a court can accept a guilty plea, "a defendant must be aware of the privilege against self-incrimination, the right to a jury trial, and the right to confront one's accusers." *Roddy*, 339 S.C. at 33, 528 S.E.2d at 421.

"A defendant has the right to the effective assistance of counsel under the Sixth Amendment to the United States Constitution." *Kolle v. State*, 386 S.C. 578, 588, 690 S.E.2d 73, 78 (2010) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)), *abrogated on other grounds by, Smalls*, 422 S.C. 174, 810 S.E.2d 836. "[T]here is

a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment in making all significant decisions in the case." *Edwards v. State*, 392 S.C. 449, 456, 710 S.E.2d 60, 64 (2011) (quoting *Ard v. Catoe*, 372 S.C. 318, 331, 642 S.E.2d 590, 596 (2007)).

Of import in this case is our supreme court's Order Re: Operation of the Trial Courts During the Coronavirus Emergency (S.C. Sup. Ct. Order dated December 16, 2020). The Order states:

> **Guilty Pleas.** Guilty pleas may be conducted as specified by section (c)(3) above. However, a guilty plea by remote communication technology will not be conducted unless both the defendant and prosecutor consent. If the defendant will participate by remote communication technology, *the trial court must make a determination that the defendant is knowingly and intelligently waiving his right to be physically present for the plea.* If the defendant's counsel will participate by remote communication technology, *the trial court must determine that the defendant is knowingly and intelligently waiving any right to have counsel physically present*, and the court must ensure that the defendant has the ability to consult privately with counsel during the plea proceeding as may be necessary.

(emphases added). Miller argues plea counsel was deficient for not being aware of the Order and failing to alert the trial court that he could not privately confer with Miller during the guilty plea. Miller claims he was denied counsel during the critical stage of his case, and therefore, prejudice should be presumed. *See McKnight v. State*, 320 S.C. 356, 359, 465 S.E.2d 352, 354 (1995) ("[W]hen counsel is denied at a critical stage of a defendant's trial, prejudice will be presumed and harmless error analysis is precluded. Inquiry under the two-part test established in *Strickland* is therefore inappropriate."). We agree.

In most aspects this was a "textbook" guilty plea. However, during the unprecedented circumstances of the coronavirus pandemic, the Order added to the rights of a defendant by requiring the trial court to determine a defendant knowingly and intelligently waived his rights to be physically present for the guilty plea and to have counsel physically present. The additional requirements of the Order were not met here.

We find plea counsel's failure to alert the trial court that he could not privately communicate with Miller, failure to be aware of the Order, and failure to ensure the trial court followed the Order with respect to determining whether Miller knowingly and intelligently waived his rights constituted ineffective assistance of counsel. Miller told the PCR court he did not have access to plea counsel during the plea and could not ask plea counsel questions. Plea counsel did not know if Miller knew he had to request a line of communication with him and he did not know whether the court was under an obligation to provide a line of communication between attorney and client. It was plea counsel's responsibility to ensure Miller's rights were safeguarded. Under the particular facts of this case, plea counsel failed to render reasonably effective assistance under prevailing professional norms. *See Thompson v. State*, 340 S.C. 112, 116, 531 S.E.2d 294, 296 (2000) ("[A]ttorney's failure to object fell below prevailing professional norms.").

Miller's isolation from counsel with no recourse amounted to denial of counsel during the guilty plea and was exactly the type of situation the Order was intended to prevent. Because Miller was effectively denied counsel, prejudice is presumed in this case. *See McKnight*, 320 S.C. at 359, 465 S.E.2d at 354 ("[W]hen counsel is denied at a critical stage of a defendant's trial, prejudice will be presumed and harmless error analysis is precluded. Inquiry under the two-part test established in *Strickland* is therefore inappropriate."). Therefore, the PCR court erred in denying Miller's PCR application.

**CONCLUSION**

Accordingly, the order of the PCR court is **REVERSED.**[2]

**THOMAS and CURTIS, JJ., concur.**

---

[2] We decide this case without oral argument pursuant to Rule 215, SCACR.